People of State of Illinois, Defendant in Error, v. Harrison Parker, Plaintiff in Error.

Gen. No. 43,372.

Opinion filed February 14, 1946.   Released for publication February 26, 1946.

ARTHUR FRANKEL, of Chicago, for plaintiff in error.

WILLIAM J. TUOHY, State's Attorney, for defendant in error; JACOB SHAMBERG, GORDON B. NASH, JOHN T. GALLAGHER and GEORGE B. DUGGAN, Assistants State's Attorneys, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This writ of error seeks to review two separate judgment orders.   In each Harrison Parker, plaintiff in error, was found guilty of a direct contempt of the

trial court, and the punishment imposed was ninety days in the county jail.

Both judgment orders were entered in a suit wherein plaintiff in error (hereinafter sometimes called Parker), on December 8, 1943, sued Jacob Shamberg for slander in saying of him, "You are a blackmailer." One of the defenses interposed was that "the words complained of are true." After Parker had been granted a change of venue from Judges PRYSTALSKI, BROTHERS, FISHER and MINER the cause was transferred to Judge TRUDE.

As to the first amended judgment order, entered January 23, 1945:

This judgment order found Parker guilty of a direct contempt of the court for filing in the office of the clerk of the Circuit court on January 4, 1945, an affidavit and certain documents attached thereto; and for filing on January 15, 1945, an answer and exhibits attached thereto. The affidavit and the documents attached thereto and the answer and the exhibits attached thereto were made a part of the judgment order.

After certain preliminary steps had been taken in the slander proceeding, Shamberg, on January 2, 1945, filed a verified motion in which he asked that an order be entered directing Parker to show cause why he should not produce for inspection and to be copied or photographed certain documents, specifying them; that Parker be required to state by affidavit whether any of the said documents are now or have been at any time in his possession or power, and if not now in his possession or power, when he parted with the same and what has become of them. The affidavit attached to the motion alleged that the documents related to the issues in the cause. The trial court entered an order that contains the following: "First, that the plaintiff, Harrison Parker, within four days from the date hereof, show cause why he should not produce for in-

spection, and to be copied or photographed, the documents described in said written motion . . . ," and "Second, that the plaintiff, Harrison Parker, within four days from the date hereof, state by affidavit filed in this Court whether any of the documents described in said written motion are now or at any time in the past have been in his possession or power, and if not now in his possession or power, when he parted with the same and what has become thereof." Instead of complying with the order, Parker, on January 4, 1945, filed in the office of the clerk of the court an affidavit to which were attached and made a part of it certain documents, one purporting to be a "Certified Copy of a Resolution Passed at the Joint Meeting of the Ecumenical Council of the Puritan Church of the United States and the College of Divines of the Brotherhood of the Order of St. John, Held at the Masonic Temple, 32 W. Randolph Street, on August 16th, 1943, and Amended at the Adjourned Meeting Held in Chicago on February 5, 1944"; another, purporting to be a copy of a letter of "The Puritan Church—The Church of America," addressed to "The Illinois League of Women Voters, 225 North Michigan Avenue, Chicago, Illinois," dated December 20, 1944, signed, "The Puritan Church By Harrison Parker, its Chancellor"; another, purporting to be a copy of a letter of said church, addressed to "The Anti Defamation League, 100 North LaSalle Street, B'Nai B'Rith, Chicago, Illinois," signed, "The Puritan Church By Harrison Parker, its Chancellor"; another, purporting to be a copy of a letter of said church, addressed to the "Hon. Francis Biddle, Attorney General of the U. S. A., Washington, D. C.," dated December 26, 1944, signed, "The Puritan Church By Harrison Parker, its Chancellor"; another, purporting to be a copy of a letter of said church, addressed to "Mr. Richardson," dated December 25, 1944, and signed, "Harrison Parker." Parker states in the affidavit

that when he moved his private files from 4534 Greenwood avenue, Chicago, in November, 1944, he destroyed all of his correspondence with Messrs. Miner, Norris and Race, "along with a lot of other useless and unimportant to him letters, records, etc.," and that he has attached to his affidavit all of the requested documents which he has at present in his possession, power, custody or control.

It would unduly lengthen this opinion to state in detail all of the many wild, malignant and scandalous charges that are made in the documents attached to the affidavit, against individuals, prominent public officials, judges of the various courts of Cook county, the judges of the Appellate court of this District, judges of the Supreme court of the State, and a judge of the United States District court. The charges are not confined to the living—one of those attacked has been deceased for fifty years. Women, also, are wantonly attacked. The father of the trial judge, who died a number of years ago, is charged with having put through a crooked deal, by which the public was robbed of enormous sums of money and a certain family enriched thereby. The first document attached to the affidavit charges, *inter alia,* that Robert R. McCormick "has either influenced, intimidated or bribed a U. S. Court Judge of Chicago in Case No. 22619, to issue a crooked order which enabled him to enter his best friend's home, to steal his wife and break up his friend's home"; that the public records show that McCormick either influenced, intimidated or bribed Judges FISHER and BURKE in a certain case to issue crooked orders in a vain attempt to hide the fact that a certain newspaper had stolen the sum of a hundred million dollars from Cook county; that the "public records show that . . . McCormick either influenced, intimidated or bribed Justices STONE, GUNN and WILSON, still sitting on the Supreme Court of Illinois, to write in case 24881 an opinion more crooked than any

ever written by Judge MANTON of Atlanta Prison, by which Cook County's legal orderly law suit to compel the Chicago Tribune to disgorge millions of dollars it has stolen from Cook County, was temporarily obstructed"; that "the public records show that . . . McCormick either influenced, intimidated or bribed the entire division of the Appellate Court of Chicago, presided over by Judge HUGO FRIEND, to write a crooked opinion in Case No. 39804, in litigation in which McCormick and his Weymouth Kirkland had a large money interest·in a crooked opinion"; that in that opinion "the honest litigant [Parker] against Kirkland was outraged and despoiled by the crooked opinion of a crooked judge"; that "the public records show that . . . McCormick either influenced, intimidated or bribed Judges JOSEPH A. SABATH and JOHN PRYSTALSKI, of the Criminal Court of Cook County in Cases 20981 and A40, to 'railroad' to Joliet Prison and to the Cook County Jail, for the benefit of this unconscionable scoundrel McCormick, men whom the Supreme Court of Illinois records in cases 20981 and 25595 show to be innocent of the charges for which they were 'railroaded;'" that "by reason of the corruption by said McCormick and his crooked lawyers of all the Courts of Illinois from Eugene McGarry's Municipal Court up to and including Francis Wilson's crooked Supreme Court of Illinois, the combined money fortunes of the Medill-McCormick-Patterson family now amounts to the dangerous figure of 125 million dollars"; that "the facts and evidence of the Chicago Tribune's 100 million dollar steal from Cook County and Robert R. McCormick and Weymouth Kirkland's pollution of the entire court system of Illinois, in a vain effort to hide their crimes, is even worse than it is in the above summary of the evidence, dug from actual public records"; that for "fixing crooked judges to write crooked opinions," McCormick "should be either incarcerated in an insane asylum

or taken out by a posse of indignant and robbed fellow citizens, and either shot or hanged to an oak tree"; that McCormick, his newspaper and his crooked law firm have aided in placing on the Circuit and Superior courts of Cook county and the Appellate and Supreme courts of Illinois judges who pass judgment on the lives and property of defenseless men and women who have no way to protect themselves "against the depravities which such scoundrels will commit under the cover of a court order and opinions"; that the Governor of Illinois, by the orders of said McCormick, has and is violating the Constitution of Illinois; that "one Werner Schroder, McCormick member from Illinois of the Republican National Committee, walks in and out of the back doors of the chambers of the crooked judges of the Supreme Court of Illinois, to make political deals for them and with them, and . . . McCormick"; that the courts of Illinois are not open to the citizens of Illinois because of the corruption of the judges. The document purports to show that a resolution was passed by the "Ecumenical Council of the Puritan Church of the United States" that the Federal Government at Washington be petitioned to convene a federal grand jury to investigate the charges made in the document and that President Roosevelt, under his war powers, "convene a military court, and under the rules of such a court try for the crimes which they are charged with having committed against the civil liberties of the Nationals who are compelled to dwell in Illinois, the following men: Robert R. McCormick, Joseph Medill Patterson, Weymouth Kirkland, Judges HARRY M. FISHER, JOSEPH BURKE, JOHN PRYSTALSKI, HUGO FRIEND, JOSEPH A. SABATH, and Justices WILSON, GUNN and STONE of the Supreme Court of Illinois. If found guilty, they should be taken out either by soldiers or a posse of civilians and shot, as a warning to other scoundrels, that our Federal Government will not tolerate the violation of a State Consti-

tution, and the 'railroad' to prison or jail of innocent men by the order of crooked judges in the hire of this scoundrel, McCormick.'' Appended to the document is an affidavit made by Parker in which he states that he was the secretary of the Joint Meetings of the Ecumenical Council of the Puritan Church of the United States, held at the Masonic Hall, 32 W. Randolph Street, Chicago, on August 16, 1943, and in Chicago on February 5, 1944; that Deacon William Ede presided; and that the document ''is a true amended copy of one of the resolutions unanimously passed at said meetings.'' In the third document attached to the affidavit, the letter to ''The Anti Defamation League, B'Nai B'Rith,'' the statement is made that ''by the corruption of the entire court system of Illinois from Eugene McGarry's corrupt Municipal up to and including Francis Wilson's crooked Supreme Court of Illinois,'' the Chicago Tribune had stolen from the State of Illinois a hundred million dollars; ''that the steal was accomplished by the open notorious cowardly and illegal connivance between the Tribune Company, the owners of the Chicago Tribune, and two Jews: one HARRY M. FISHER, a Judge of the Circuit Court of Cook County; and the other, Jacob Shamberg, the Assistant State's Attorney of Cook County''; that ''both of these gentlemen . . . in order to gain the favor of the thief, the Chicago Tribune, had criminally sold out the State which they had been paid to protect''; that an illegal order entered by Judge FISHER in a certain case, 38–C–3209, ''was more crooked than any ever issued by Judge MANTON of Atlanta Prison.'' In the letter addressed to the Attorney General of the United States the statement is made that McCormick and his crooked lawyer, Weymouth Kirkland, ''have corrupted the entire [court] system of Illinois, from Eugene McGarry's Municipal up to and including Francis Wilson's crooked Supreme Court of Illinois.'' In the letter addressed to

54

the Illinois League of Women Voters the charge is repeated that the Tribune has corrupted all of the courts of Illinois. While contempt proceedings against him, growing out of the filing of the affidavit and the documents attached to it, were pending, Parker filed, on January 15, 1945, an answer, in which he stated that "all of the contents of said letters, documents and papers [attached to his affidavit] are true." Attached to the answer as an exhibit is a copy of his affidavit of January 4 and all of the exhibits attached to it.

In the amended judgment order entered January 23, 1945, the trial court found: "(3) That the filing of said scurrilous affidavit and exhibits thereto, and said scurrilous answer and exhibits thereto, by said Harrison Parker constitutes an obstruction of justice and an abuse of the processes of this Court, which conduct of said Harrison Parker took place while this Court was in open session and tended to lessen the dignity and authority of this Court; (4) The Court further finds that said Harrison Parker, who is now here present in open Court, is, by reason of said conduct guilty of direct contempt of this Court." The sentence then follows.

When the order of January 2, 1945, was entered, Parker, after stating to the trial court that he had no objection to the entry of the order if the court wished to enter it, said, "I will have a nice answer; one that the town will be glad to have on record." The record justifies the conclusion that Parker desired publicity for his infamous charges and that in furtherance of that desire he filed the pleading and documents, so that the records of the courts would contain his charges. In the documents and pleading filed by Parker he is pictured as a man of great ability and force, but after a careful consideration of the many wild charges and statements contained in the documents and pleading we concluded that if there had been interposed in the trial court the defense that

Parker was not of sound mind when he filed the documents and pleading, such a defense would have required serious consideration by the trial court and this court, but the record shows that no such defense was made and, therefore, for the purposes of this writ of error, we are obliged to presume that Parker was of sound mind when he committed the contempt of court for which he was punished.

A number of so-called constitutional questions are raised by Parker. He sued out from this court the instant writ of error to review the two judgment orders finding him guilty of contempt. "The rule has long been settled that if a case is taken to the Appellate Court *and errors are assigned of which that court has jurisdiction,* the party taking the appeal or suing out the writ of error is deemed to have waived all constitutional questions involved. (*People v. Terrill,* 362 Ill. 61; *People v. Rosenthal,* 370 id. 244.) This eliminates from consideration the constitutional questions raised by plaintiff in error." (*People v. Billow,* 377 Ill. 236, 239. Italics ours.) After Shamberg raised the point in his brief that Parker had waived all constitutional questions by suing out a writ of error from this court, Parker, in his reply brief, asserts that he has not and does not waive any of the constitutional questions, and that "if Parker has appealed to the wrong forum, that can be remedied by a motion to transfer it to the proper forum. And the Appellate Court has a duty, not to proceed to judgment, but to transfer the cause, and may do so, on its own motion. (*Schmidt v. Barr,* 328 Ill. 365.)" Parker contends that under Section 86 of the Practice Act (ch. 110, par. 210, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 104.086]) and Rule 47 of the Supreme court of Illinois it is our duty to transfer the cause to the Supreme court. That section and that rule apply to cases brought to this court where we have no jurisdiction to entertain any of the issues raised on an appeal or writ

of error. *Schmidt v. Barr, supra,* cited by Parker, is a case in point. There a freehold was involved, and it was held that as the Appellate court had no jurisdiction of such a case it was the duty of the court to transfer the cause to the Supreme court. But in the instant case Parker, by suing out a writ of error from this court, waived all constitutional questions that might be involved, *as his brief assigns a number of errors of which this court has jurisdiction,* and it is our right and duty to determine the merits of the instant writ of error.

■■ There are certain settled principles of law that govern us in the consideration of this writ of error. "The only matter that can properly be considered on such a review is the order of the court adjudging the party to be in contempt. *People v. Hogan,* 256 Ill. 496; *People v. Gard,* 259 Ill. 238; *Kneisel v. Ursus Motor Co.,* 316 Ill. 336; *People v. Rockola,* 346 Ill. 27; *People v. Andalman,* 346 Ill. 149; *People v. Saylor,* 238 Ill. App. 142; *Tunnell v. People ex rel. Miller,* 253 Ill. App. 422; *Whittem v. State,* 36 Ind. 196; *Ex Parte Terry,* 128 U. S. 289." (*People ex rel. Bain v. Feinberg,* 266 Ill. App. 306, 308.) "A contempt committed in any place set apart for the use of any constituent part of the court during the session of the court is committed in the presence of the court, and any conduct constituting a contempt in the presence of any one of the constituent parts of the court while engaged in the business devolved upon it by law is a contempt committed in the immediate presence of the court. (*People v. Cochrane,* 307 Ill. 126.)" (*People v. Andalman,* 346 Ill. 149, 153.) These settled principles of law determine several contentions raised by Parker, and adversely to him.

It is contended that "there can be no defamation when the matters published are true and of public concern"; that "Parker denies that the truth, as set forth in the five exhibits, constitute either an obstruction of

justice or an abuse of the processes of the court. If they are true, how can they be an obstruction of justice? If they are true, how can they be an abuse of the processes of the Circuit Court? *Nothing in the record contraverts the truth of Exhibits A, B, C, D and E, the finding and order of the Honorable Daniel P. Trude to the contrary notwithstanding. They are still true.* And can Parker be charged with responsibility for what the Puritan Church did?'' (Italics ours.) In support of his argument Parker cites *Storey v. People,* 79 Ill. 45, which case has no application to the instant proceedings. (See *People v. Sherwin,* 334 Ill. 609, 613.) Parker further contends that before the trial court could find him guilty of contempt it would have to hear evidence to determine the truth or falsity of the charges made and would then have to find that the charges were false before it could adjudge him guilty of contempt. It would seem hardly necessary to state that no authority is cited that supports this contention.

"Any act which is calculated to embarrass, hinder or obstruct the court in the administration of justice or to lessen its authority or dignity is a contempt. (*People v. Cochrane,* 307 Ill. 126.) Contempt may be committed by incorporating impertinent, scandalous, insulting or contemptuous language reflecting on the integrity of the court in pleadings, motions and notice of motions. (13 Corpus Juris, 31, 32.) In *Lamberson v. Superior Court,* 151 Cal. 458, 91 Pac. 100, an attorney was held guilty of contempt of court in filing an affidavit in support of a motion for change of venue from the judge, alleging that in a former trial of the case the judge willfully made erroneous rulings on the admission of evidence and gave erroneous instructions to the jury because of ill-will toward and hatred of the party making the application. In *McCormick v. Sheridan,* 20 Pac. (Cal.) 24, an attorney was held guilty of contempt in filing a petition for rehearing in which the good faith and sincerity of the commissioner who had

written the opinion adopted by the court was attacked. In *In re Dunn,* 85 Neb. 606, 124 N. W. 120, an attorney was held guilty of contempt of court in filing a petition for rehearing containing contemptuous and insolent language. . . . The disclaimer by plaintiff in error of any intentional disrespect to the court or any design to embarrass the administration of justice would have been of no avail, since his meaning and intent must be determined from the words used in his petition. (*People v. Wilson, supra* [64 Ill. 195].) In direct contempt committed in the presence of the court there is no need of evidence to prove what is already manifest. (*Hohenadel v. Steele,* 237 Ill. 229.) Whatever may have been the motive of plaintiff in error in using the language which was used in the petition filed by him, the use of such language was improper and constituted a direct contempt of the court in which such petition was filed, and the circuit court did not err in so finding.'' (*People v. Sherwin, supra,* 615, 616, 618.) In this last case it is stated (p. 618) that an answer that the charges made were true would not purge the defendant of contempt. The trial judge in the instant case would have been a fit subject for ridicule had he followed the practice that Parker insists was necessary.

Parker contends that the charges contained in the documents filed were made by the Puritan Church and that he cannot be held responsible for the acts of that church. It is a sufficient answer to this idle contention to say that he has been found guilty of direct contempt for *filing* the documents in the office of the clerk of the court.

We find no merit in several other contentions raised by Parker.

While we think that the punishment imposed was too mild in view of the nature of the offense, nevertheless, the judgment entered may tend to deter evil-minded persons from defiling the records of our courts.

We cannot allow certain conduct of the attorney for Parker to pass without condemnation. In the brief he filed in behalf of Parker he has seen fit to assert a number of times that all of the charges made by Parker are true. In the early part of our opinion we stated some of the infamous charges that are contained in a purported copy of a resolution passed at the joint meetings of the Puritan Church in Chicago on August 16, 1943, and on February 5, 1944. Referring to these charges, this attorney states: ''It [Exhibit A] recites facts, which though deplorable, are nonetheless true, and as such, they are the basis upon which the Federal Government is urged to bring its power to bear so that 'republican form of government' can be re-established in Illinois.'' In commenting upon the exhibits attached to the affidavit filed by Parker on January 4, 1945, this attorney states: ''If these exhibits are true, and they have never been proved otherwise, how can they be what the defendant, Shamberg, and his Tribune lawyers have stated them to be? Neither the Tribune lawyers nor anyone else can make the truth anything but the truth, even though the necessity be ever so urgent. Can the mere statements of Shamberg and his Tribune lawyers override the laws of Illinois, the Constitution of the State of Illinois, and the Constitution of the United States, in addition to the truth? How can the power of contempt be superior to the truth? Can the power of contempt be used as a bludgeon? If contempt is equal or superior to the truth, then it can be used to squelch, choke off and destroy the truth, but the history of the world proves that such is impossible not only in theory, but in practice, any rulings of the Honorable DANIEL P. TRUDE to the contrary notwithstanding.'' Other statements akin to the foregoing are also made in the brief. Thus it appears that the attorney sustains the infamous charges made by Parker against all of the courts of Illinois. It is our considered judgment that when

Arthur Frankel, the attorney in question and an officer of this court, filed the brief for Parker in this court he was guilty of conduct far more reprehensible than that of Parker in filing the affidavit and the documents on January 4, 1945, and the answer on January 15, 1945.

"The lawyer's duty is of a double character. He owes to his client the duty of fidelity, but he also owes the duty of good faith and honorable dealing to the judicial tribunals before whom he practices his profession. He is an officer of the court—a minister in the temple of justice." (*People v. Beattie,* 137 Ill. 553, 574. See, also, *People v. Barrios,* 237 Ill. 527, 540.) "The obligation which attorneys assume when they are admitted to the bar is not merely to be obedient to the constitution and laws, but to maintain at all times the respect due to the courts of justice and judicial officers." (6 C. J. 594, Attorney and Client Sec. 54.)

Attorney Frankel was false to his obligations as an attorney when he filed the brief in question, and he has proven, out of his own mouth, that he is not fit to serve as "a minister in the temple of justice."

The first amended judgment order entered January 23, 1945, is affirmed.

As to the second contempt order, entered against Parker on January 23:

On January 15, 1945, eleven days after Parker had filed the affidavit and documents attached thereto, Shamberg filed in the slander proceedings a very long verified petition. It prays for an order directing Parker to show cause why he should not be punished for contempt of court for committing certain acts charged in the petition. The petition is an anomalous pleading, and was clearly vulnerable to attack by apt pleadings. As Parker was found guilty of the second direct contempt because of certain statements in his answer to the petition, it is unnecessary for us to state all of the averments of the petition. In his brief Shamberg

describes the petition as "a sworn petition asking for a rule on Parker to show cause why he should not be punished for other and further contempts, some *indirect.*" We deem it necessary, however, to state the following averments in the petition:

"Said Parker has stated under oath that said so-called 'Puritan Church' and said 'Brotherhood of The Ancient Order of St. John' have made plans to hang and murder numerous citizens and public officials, including the Governor of Illinois, several judges of the Supreme Court of Illinois, the Appellate Court of Illinois, and the Circuit and Superior Courts. Said Parker, in his deposition heretofore taken, identified letters he had written threatening to commit the above-mentioned murders, which letters he had signed 'Puritan Church—by Harrison Parker.' It was, therefore, alleged by and on behalf of this defendant in the divers petitions (filed to procure subpoenas), that said so-called 'Puritan Church' was either in conspiracy with said Parker to commit extortion by threatening to commit the above-mentioned murders, or else was merely a sham devised by said Parker in an attempt to surround his attempted extortion and blackmail with an odor of sanctity.

"Said Parker, in resisting said petitions, and all other attempts to ascertain by deposition and in open court the identity and whereabouts of the persons he pretended composed said so-called 'Puritan Church' and said so-called 'Brotherhood of The Ancient Order of St. John,' stated under oath, both in the taking of his own and other depositions, and also in open court, on numerous occasions, that said so-called 'Puritan Church' and said so-called 'Brotherhood of The Ancient Order of St. John' had three 'trustees', one Conrad Miner, one Charles Norris, and one Homer Race, but that he did not know the whereabouts or residence of any of these three supposed 'trustees.'

"Defendant [Shamberg] was and is still seeking to procure the testimony of said three supposed 'trustees', Miner, Norris and Race, for the purpose of showing either that said so-called 'Puritan Church' and said so-called 'Brotherhood of The Ancient Order of St. John' were either in conspiracy with said Parker to commit the crime of extortion by threatening to commit the above described murders, or else were merely shams and fraudulent devices designed by said Parker, in an attempt to surround his attempted extortion and blackmailing with an odor of sanctity." The petition also avers that in one of the preliminary hearings in the slander suit after Parker had made a certain statement to the trial court Shamberg's attorney stated to the court: "This man [Parker] is very slippery," and they desire to have him make the statement under oath.

The prayer of the petition is: "(1) An order be entered directing said Parker to show cause why he should not be punished for contempt of court *first,* for obstructing justice by destroying the above mentioned records of said so-called 'Puritan Church' and said so-called 'Brotherhood of the Ancient Order of St. John' and said correspondence between said Parker and said Miner, Norris and Race while the same were being sought as evidence material to the merits of the matter in question in this cause; *second,* for obstructing justice by committing perjury by knowingly falsely swearing in open court on December 4, 1944, and on January 2, 1945, that all of said records were then in Canada; and *third,* for obstructing justice by committing perjury by knowingly falsely swearing in his said affidavit of January 4, 1945, that he had never heard of and never had any connection with the so-called 'Puritan Church Committee to Aid in Driving the Hoodlums, the Assassins and the Blackmailers out of the Control of Labor Unions, out of the Control of the Legal Profession, out of the Control of Journalism, and out of the Control of Politics—Conrad Miner, Charles

Norris, Harrison Parker, Chairman.' (2) Petitioner likewise prays that said Harrison Parker be ordered to answer this petition under oath within a short day to be fixed by the Court.'' The trial court ruled that Parker should answer the petition.

When Shamberg's petition is considered in the light of the fact that Parker had demanded a jury trial in the slander case, it seems reasonably clear that the trial court should not have ruled Parker to answer the petition, as the evident purpose of that pleading was to have the trial court prejudge facts that Parker insisted should be submitted to a jury. Parker's answer to the petition takes up a great many pages of the record. After the answer had been filed the trial court entered the following judgment order:

### "ORDER

"THIS CAUSE COMING ON TO BE HEARD upon the sworn petition of defendant, Jacob Shamberg, filed by leave of court on January 15, 1945, while the cause of 'Harrison Parker, Plaintiff, vs. Jacob Shamberg, Defendant, No. 43C–13381' was still pending before this court, *for an order requiring said Parker to show cause why he should not be punished for criminal contempt of court* by reason of the matters and things in said petition alleged, and upon Harrison Parker's answer thereto filed on January 22, 1945;

"THE COURT FINDS:

"(1) The Court has jurisdiction of the parties and of the subject matter hereof;

"(2) That on January 15, 1945, a sworn petition was filed on behalf of the Defendant, Jacob Shamberg, in the case of 'Harrison Parker, Plaintiff, vs. Jacob Shamberg, Defendant, No. 43C–13381,' *which sworn petition charged said Harrison Parker with criminal contempt of court* by reason of the matters and things therein alleged;

"(3) That on January 15, 1945, an order was entered by this Court, requiring the said Harrison Parker

to show cause by Friday, January 19, 1945 *why he should not be punished for criminal contempt of court by reason of the matters and things set forth in said petition* filed on behalf of said Jacob Shamberg;

"(4) . . .

"(5) That on Monday, January 22, 1945 said Parker filed in the office of the Clerk of the Circuit Court of Cook County his 'Answer to Petition for Rule to Show Cause,' a true and photostatic copy of which Answer is attached hereto, incorporated herein, and made a part hereof, and marked 'Exhibit A' hereto;

"(6) That said 'Answer to Petition for Rule to Show Cause,' so filed by said Harrison Parker on January 22, 1945 which answer is attached hereto, incorporated herein, made a part hereof, and marked 'Exhibit A' hereto, *does not purge said Parker of the criminal contempt charged in said sworn petition filed on behalf of said Shamberg on January 15, 1945;*

"(7) That in said 'Answer to Petition for Rule to Show Cause,' so filed by said Parker on January 22, 1945 said Parker has affirmatively set forth scurrilous, scandalous, defamatory, immaterial matter, which constitutes an obstruction of justice and an abuse of the processes of this court, and which conduct of said Harrison Parker took place while this court was in open session and tended to lessen the dignity and authority of this court;

"(8) THE COURT FURTHER FINDS that said Harrison Parker, who is now here present in open court, is, by reason of said conduct, guilty of direct criminal contempt of this court;

"WHEREFORE, THE PREMISES CONSIDERED:

"IT IS ORDERED AND ADJUDGED that said 'Answer to Petition for Rule to Show Cause,' heretofore filed by said Parker in the office of the Clerk of this court on January 22, 1945 which is attached hereto, incorporated herein, made a part hereof, and marked 'Exhibit A' hereto, be, and the same is hereby attached hereto,

incorporated herein, made a part hereof and marked 'Exhibit A' hereto with the same force and effect as if the same were set forth in full in the body of this order; and

[A] "IT IS FURTHER ORDERED AND ADJUDGED that said Rule to Show Cause heretofore issued by this court on January 15, 1945 requiring Harrison Parker to show cause why he should not be punished for contempt of court by reason of having committed the acts set forth in said petition heretofore filed on behalf of said Jacob Shamberg on January 14, 1945, in the case entitled Harrison Parker, Plaintiff, vs. Jacob Shamberg, Defendant, No. 43C-13381, be and the same is hereby made absolute; and

[B] "IT IS FURTHER ORDERED AND ADJUDGED that said Harrison Parker was and is hereby adjudicated guilty of and in direct criminal contempt of this court by reason of his having affirmatively set forth the scurrilous, scandalous, defamatory and immaterial matters set forth by him in said 'Answer to Petition for Rule to Show Cause,' heretofore filed by said Harrison Parker in the office of the Clerk of this Court on January 22, 1945; and

"IT IS FURTHER ORDERED AND ADJUDGED that said Harrison Parker stand committed to and be confined in the County Jail in said County of Cook and State of Illinois for ninety (90) days; . . ." (Italics ours.)

This order shows that the trial court thought that the petition of Shamberg charged Parker with "direct criminal contempt" of court, whereas it merely asked for a rule upon Parker to answer the petition; that the trial court thought that the order he entered required Parker to show cause why he should not be punished for criminal contempt of court, whereas the order merely required Parker to answer the petition filed by Shamberg. The court, in paragraph (6) of his judgment order, held that Parker by his answer did not purge himself "of the criminal contempt charged

in said sworn petition filed on behalf of said Shamberg.'' Shamberg admits in his brief, as he must, that his petition charges only indirect contempts, and that Parker could not be punished, under the petition, for destroying records out of the presence of the court, or for committing perjury in the presence of the court. Shamberg is compelled to rely, for an affirmance of the judgment order, upon that part of the order that we have designated as ''[B]'', wherein the court adjudges that Parker was guilty of direct criminal contempt of the court by reason of ''scurrilous, scandalous, defamatory and immaterial matters set forth by him in said 'Answer to Petition for Rule to Show Cause.' '' The court does not designate the part or parts of Parker's answer that are ''scurrilous, scandalous, defamatory and immaterial,'' but Shamberg, in his brief, relies upon that part of Parker's answer wherein he charges that in the petition for rule to show cause one of Shamberg's counsel had ''knowingly and recklessly perjured himself,'' and had taken ''reckless liberties with the orderly processes of the law''; also upon the following paragraph of Parker's answer: ''Two: That this Honorable Court, upon its own motion, examine into the conduct, herein set forth of said petitioner, Jacob Shamberg, and of his said counsel, Kirkland, Fleming, Green, Martin & Ellis, attorneys, and particularly said J. B. Martineau, Jr., for any improper conduct of which they are or any of them may be found guilty, particularly for their presuming to contrive to have one judge of this Honorable Court overrule the rulings of another judge of the Honorable Court, against the dignity of this Court, and for committing perjury by swearing knowingly and falsely to certain petitions and motions filed herein by them or either of them; that in the event that they or any of them be found guilty, that they be punished accordingly, forthwith.''

When Shamberg filed the instant petition Parker had already filed the documents and pleading, thereby committing the contempt for which he was punished in the first amended judgment order, and in one of the documents Shamberg, *an assistant State's attorney,* was charged with selling out the State of Illinois and conniving with a thief, so that the latter was enabled to steal one million dollars from the State of Illinois. It is a reasonable assumption that when Shamberg filed his petition he was justly incensed at Parker because of that charge. In determining whether any statements in Parker's answer constitute direct contempt of court it must also be noted that Shamberg in his petition for a rule made many serious charges against Parker. The latter undoubtedly had the right to answer these charges and to make counter-charges. The petition is a highly provocative plead-ing, and Shamberg probably intended that it should have that effect. There is some force in the contention of Parker that the petition was designed to provoke him into making some answer or statement that would subject him to criminal prosecution or contempt pro-ceedings. There is also force in Parker's argument that if the statements he made in his answer, upon which Shamberg now relies, constitute contempt of court, why did not the many charges made against Parker in the petition also constitute contempt of court? We do not think that the statement made by Parker in his answer wherein he asks the court to examine into the conduct of Shamberg and his counsel constitutes contempt of court, as Parker had as much right to ask the trial court to inquire into the conduct of Shamberg and his counsel as Shamberg had to ask the court to inquire into certain conduct of Parker. Shamberg contends, rather feebly, that certain parts of Parker's answer attack the trial court, and cites in support of the contention, "(*Add. A. 158–192*)." We

do not think that any statement contained in that part of Parker's answer justifies the instant contempt judgment. The petition bitterly attacks the so-called Puritan Church, and Parker in his answer defends the church from the attacks and insists that under the constitution the courts have no right to interfere with the conduct of churches. He states in the answer that Judge HARRINGTON, when the matter was before him, refused to aid Shamberg in his attempts to inquire into the membership and conduct of that church, and that Shamberg, in his petition, is seeking to have Judge TRUDE overrule Judge HARRINGTON, but that statement did not constitute direct contempt of court. We think that when the statements made by Parker in his answer are considered in the light of the serious charges that were made against Parker and the Puritan Church in the petition, the answer seems to be a fairly temperate pleading. We have reached the conclusion that the trial court erred in entering the second judgment order, finding Parker guilty of a direct criminal contempt.

The amended judgment order of the Circuit court of Cook county, entered January 23, 1945, finding Harrison Parker guilty of direct contempt, is affirmed. The second judgment order of the Circuit court of Cook county, entered January 23, 1945, finding Harrison Parker guilty of direct criminal contempt of court, is reversed.

*Amended judgment order of the circuit court of Cook county entered January 23, 1945, finding Harrison Parker guilty of direct contempt, affirmed. Second judgment order of the circuit court of Cook county entered January 23, 1945, finding Harrison Parker guilty of direct criminal contempt of court, reversed.*

FRIEND, P. J., and SULLIVAN, J., concur.