# PARKER *v.* ILLINOIS.

No. 270.   Argued February 13, 1948.—Decided April 5, 1948.

Petitioner argued the cause and filed a brief *pro se.*

*William C. Wines,* Assistant Attorney General of Illinois, argued the cause for respondent. With him on the brief was *George F. Barrett,* Attorney General.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner, who was engaged in litigation in the Illinois courts with one Shamberg, was ordered on a motion for discovery to produce certain documents. He produced them by filing them with the clerk of the Illinois courts. Shamberg thereupon moved that petitioner be punished for contempt because the documents reflected on the integrity of the court. After a hearing petitioner was adjudged guilty of contempt. The court held that the order required only that petitioner produce the documents, not that he file them in court so as to make them public records; and that the filing of the documents containing statements deemed to be scurrilous constituted an obstruction of justice and an abuse of the processes of the court, tending to lessen the court's dignity and

authority.[1]  Petitioner was sentenced to jail for 90 days. That was on January 15, 1945.  Petitioner thereupon sought a writ of error in the Illinois Supreme Court for review of the order of January 15.  The writ of error was refused on January 23, 1945.  Later in the same day the trial court, over petitioner's objection and in his presence, issued an amended order adjudging him guilty of contempt and sentencing him to jail for 90 days.  This amendment was made, it is said, to cure certain defects in the order of January 15 and to bring it into conformity with the requirements of Illinois law.

The amended order of January 23 is the one before us. Petitioner did not seek to take it directly to the Illinois Supreme Court.  Rather, he took it first to the Appellate Court of Illinois where he sought to attack it on the grounds, *inter alia,* that it violated the First and Fourteenth Amendments of the Federal Constitution.  But the Illinois Appellate Court did not consider those constitutional questions.  It sustained the amended order of January 23 on state grounds.  328 Ill. App. 46, 65 N. E. 2d 457.  On writ of error the Illinois Supreme Court affirmed the judgment of the Appellate Court.  396 Ill. 583, 72 N. E. 2d 848.  It likewise did not consider the constitutional questions which petitioner presented.  For it is well-settled law in Illinois that if an appellant takes his case to the Appellate Court where errors are assigned of which that court has jurisdiction, he is deemed to have waived any constitutional questions.  *People* v. *Rosenthal,* 370 Ill. 244, 247, 18 N. E. 2d 450, 452; *People* v. *McDonnell,* 377 Ill. 568, 569, 37 N. E. 2d 159, 160.  That was the reason neither of the courts below passed on the

---

[1] The contents of the documents are reviewed in 328 Ill. App. 46, 50–54, 65 N. E. 2d 457, 459–461.

federal constitutional questions tendered by petitioner.[2] See 328 Ill. App. 46, 55, 65 N. E. 2d 457, 461; 396 Ill. 583, 587, 72 N. E. 2d 848, 850–851. The circumstance that the petitioner had taken the order of January 15 directly to the Illinois Supreme Court did not cause that Court to except this case from that well-settled rule of Illinois practice.

This Court held in *Central Union Co.* v. *Edwardsville,* 269 U. S. 190, that federal constitutional questions which Illinois held had been waived for failure to follow its procedure would not be entertained here. The nature of the questions presented in the present case seemed to us to warrant a grant of the petition for writ of certiorari to determine whether the rule of the *Edwardsville* case was applicable to the peculiar circumstances presented here.

When federal rights are involved, it is, of course, for this Court finally to determine whether the failure to follow the procedure designed by a State for their protection constitutes a waiver of them. *Davis* v. *O'Hara,* 266 U. S. 314; *Central Union Co.* v. *Edwardsville, supra.* The Court said in the *Edwardsville* case that when the waiver is founded on a failure to comply with the appellate practice of a State, the question turns on whether that practice gives litigants "a reasonable opportunity to have the issue as to the claimed right heard and determined" by the state court. 269 U. S., pp. 194–195. It was there held that the Illinois practice of requiring constitutional questions to be taken directly to the Illinois

---

[2] Constitutional questions are to be reviewed directly by the Illinois Supreme Court. Ill. Rev. Stat. c. 110, § 199 (1947). As held in this case those include questions arising under the Federal Constitution. And see *Central Union Co.* v. *Edwardsville,* 269 U. S. 190, 194. The procedure is applicable in criminal as well as civil cases. *People* v. *Terrill,* 362 Ill. 61, 199 N. E. 97; *People* v. *Rosenthal, supra; People* v. *McDonnell, supra.*

Supreme Court and of refusing to review them if review was first sought in the Appellate Court satisfied the requirement. We adhere to that decision. The channel through which the constitutional questions, raised by petitioner in his attack on the amended order, could have been taken all the way to this Court was not only clearly marked, it was also open and unobstructed.

Petitioner appears here *pro se*. But at the critical stages of this litigation he was represented by counsel of record. For the lawyer the choice was plain. Under these circumstances petitioner plainly had a reasonable opportunity to have his federal questions passed upon by the state court. When petitioner acting through counsel decided to seek review in the Appellate Court he made a choice which involved abandonment of the constitutional issues which he had raised in the proceedings. There is a suggestion that petitioner deemed it useless to try to take the amended order of January 23 to the Illinois Supreme Court since access to that court had been denied him when review of the order of January 15 was sought. But even though the attempt may have seemed futile,[3] it was only by first seeking review in the Illinois Supreme Court that he could bring to this Court the constitutional questions raised under the amended order of January 23. It is not an answer to say that he went to the Illinois Supreme Court for review of the order of January 15.[4] That is not the order under which he stands committed; it is not the order reviewed by the Illinois Supreme Court in this case. Nor could denial by the Illinois Supreme Court of his petition for a review of that earlier

---

[3] Cf. *Great Western Telegraph Co.* v. *Burnham,* 162 U. S. 339.

[4] The writ of error by which petitioner challenged the order of January 15 does not appear in the present record. We assume most favorably to petitioner that the same constitutional questions were presented there as petitioner seeks to have adjudicated here.

order have been the foundation for this petition for certiorari. Review of that order was denied by the Illinois Supreme Court on January 23, 1945. Petition for certiorari was filed here August 15, 1947. His petition for certiorari is not timely if it challenges the earlier order.[5] It presents federal questions which have been waived if it involves, as it plainly does, the amended order.

The result is no different if the orders are treated as being the same in substance though separate in point of time and form. For if the January 15 order be regarded as merely an interlocutory version of the amended order of January 23, the fact remains that the latter order was not taken directly to the Illinois Supreme Court but to the Illinois Appellate Court, with the consequences we have indicated. We find it no more unreasonable for Illinois to require a second appeal than for this Court to do so, as it does when it refuses to review the judgment of a lower state court absent a second appeal to the highest court of the State, though that be a mere formality because governed by the law of the case established in an earlier appeal. *McComb* v. *Commissioners of Knox County,* 91 U. S. 1; *Great Western Telegraph Co.* v. *Burnham,* 162 U. S. 339.

It is suggested that in this case there could be no final judgment within the meaning of § 237 of the Judicial Code, 28 U. S. C. § 344, which could be brought here by certiorari until all questions of state law had been resolved by the Illinois courts. But there would be nothing other than ministerial acts left to be done by the trial court once the Illinois Supreme Court denied direct review of the order. Cf. *Richfield Oil Corp.* v. *State Board,* 329 U. S. 69, 72–73. Any further proceedings in the

---

[5] Sec. 8 (a) of the Judiciary Act of February 13, 1925, 43 Stat. 936, 940, 28 U. S. C. § 350.

Illinois courts would be solely at the option of petitioner. In these circumstances, a judgment is no less final for purposes of our jurisdictional statute because it has been sustained solely on federal constitutional grounds.[6] That consequence is inherent in the rule formulated in *Central Union Co.* v. *Edwardsville, supra.*

*Affirmed.*

MR. JUSTICE RUTLEDGE, with whom MR. JUSTICE BLACK and MR. JUSTICE MURPHY agree, dissenting.

Petitioner has been held in contempt and sentenced to imprisonment for complying with an order of court to produce specified documents. Technically he was ordered to show cause why the documents should not be produced. After his objections to that order were overruled he complied by bringing the documents into court and filing them with the clerk.[1] Thereupon he was cited

---

[6] If direct review of the amended order were obtained in the Illinois Supreme Court, rather than denied for lack of a substantial constitutional question, that court would pass not only upon the constitutional questions but upon all other questions as well. *Groome* v. *Freyn Engineering Co.*, 374 Ill. 113, 28 N. E. 2d 274; *People* v. *Kelly*, 367 Ill. 616, 618, 12 N. E. 2d 612, 613; *Geiger* v. *Merle*, 360 Ill. 497, 505, 507, 196 N. E. 497, 500–501.

[1] At this time petitioner was not represented by counsel and there was a slight deviation from a strictly accurate compliance with the court's directive. But even if he had had counsel, the deviation was minuscule. It could not have furnished a sufficient basis, without more, for sustaining an order of contempt and commitment as for disobedience. The court's order indeed did not rest on any such ground. It rested rather on the grounds that the "filing of said scurrilous affidavit and exhibits . . . constitutes an obstruction of justice and an abuse of the [court's] processes . . . and tended to lessen . . . [its] dignity and authority . . . ." Obviously the mere filing of documents not scurrilous could have given no ground for entering or sustaining such an order. Cf. note 3.

for contempt because the documents reflected on the court's integrity and was sentenced to 90 days in jail.

Whether or not the documents would have given ground for punishment if they had been published voluntarily by petitioner,[2] the effect of the contempt judgment coupled with that of the order for production[3] has been first to compel petitioner to publish the statements by filing them and then to send him to jail for obeying the court's order. Cf. *Entick* v. *Carrington,* 19 How. St. Tr. 1029, 1073. I know of no constitutional power which permits a state to force a citizen into such a dilemma, and I think the most elementary conception of due process under the Fourteenth Amendment forbids any such action.

Yet this Court now acquiesces in this substantial and unconstitutional deprivation of petitioner's liberty by accepting an asserted procedural waiver of petitioner's substantive rights which, in my opinion, no more comports with basic conceptions of due process than does the substantive order for commitment. Constitutional rights may be nullified quite as readily and completely by hypertechnical procedural obstructions to their effective assertion and maintenance as by outright substantive denial. *Marino* v. *Ragen,* 332 U. S. 561, concurring opinion at 563.

---

[2] Cf. *Craig* v. *Harney,* 331 U. S. 367; *Pennekamp* v. *Florida,* 328 U. S. 331; *Bridges* v. *California,* 314 U. S. 252.

[3] The state makes a weak effort to avoid the order's effect by attempting to distinguish between an order to show cause why the documents should not be produced and one for their production. We have been cited to no authority holding that in Illinois the order to show cause does not have the effect of an order for production if cause is not shown or, in that event, would not support an order of contempt for failing to produce.

The entire basis of the Court's action is that the original contempt order of January 15 and the so-called amended order of January 23 are different orders; petitioner is deemed to have waived his constitutional rights by taking an appeal from the latter order to the Illinois Appellate Court rather than to the Illinois Supreme Court. The case seems simple because it is said to be "well-settled Illinois law" that both federal and state constitutional rights are waived by taking this appellate route, and because this Court has previously determined that this appellate practice gives litigants a reasonable opportunity to be heard. See *Central Union Co.* v. *Edwardsville,* 269 U. S. 190, 194–195.

I cannot accept this hypertechnical procedural nullification of constitutional rights in a case involving the liberty of the individual. The original order of January 15 and the so-called amended order are in reality the same order. Moreover, prior to this case there was no "well-settled Illinois law" to apprise petitioner that his appeal to the intermediate court would constitute a waiver of his rights in circumstances such as these, where he had already sought review of his federal questions in the state supreme court. And finally, even if the contrary had been true, I would not consider this appellate practice reasonable within the doctrine of the *Central Union* case.

Petitioner filed the "scurrilous affidavits" which led to the contempt order on two different occasions. The first was on January 4 in response to the motion to produce them for inspection. The second was on January 15 as part of his answer to Shamberg's motion for a rule to show cause why he should not be adjudged in contempt for filing documents which he was only required to produce for inspection. On this second occasion the documents were included in the pleadings because relevant

to his defense that the statements made therein were true.[4]  The court adjudged petitioner in contempt for both filings.[5]

In the original contempt order of January 15 the court specifically referred to the fact that the documents had been filed twice before, identified them carefully, and stated that they "should be by reference incorporated in this order and made a part hereof for

---

[4] Petitioner never obtained a hearing on the truth of the statements in the documents even though that issue was relevant to the merits of the slander action against Shamberg which gave rise to the contempt proceedings.  Since this slander action was dismissed on the merits without trial, it is of interest that the Illinois Appellate Court pointed out in review of the contempt order discussed in note 5 *infra:* "When Shamberg's petition is considered in the light of the fact that Parker had demanded a jury trial in the slander case, it seems reasonably clear that the trial court should not have ruled Parker to answer the petition, as the evident purpose of that pleading was to have the trial court prejudge facts that Parker insisted should be submitted to a jury."  328 Ill. App. 46, 63.

[5] On January 23 the court also issued an additional contempt order based on the tone of petitioner's answer to still another motion filed by Shamberg asking that petitioner be placed in contempt for not producing all of the documents listed in the motion to produce.  This contempt order was set aside by the Illinois Appellate Court.  See note 4 *supra.*  Among other things that court stated: "[Shamberg's] petition is a highly provocative pleading, and Shamberg probably intended that it should have that effect.  There is some force in the contention of Parker that the petition was designed to provoke him into making some answer or statement that would subject him to criminal prosecution or contempt proceedings.  There is also force in Parker's argument that if the statements he made in his answer, upon which Shamberg now relies, constitute contempt of court, why did not the many charges made against Parker in the petition also constitute contempt of court? . . .  We think that when the statements made by Parker in his answer are considered in the light of the serious charges that were made against Parker and the Puritan Church in the petition, the answer seems to be a fairly temperate pleading."  328 Ill. App. 46, 67–68.

greater certainty." At a later point in the order the documents were again listed and adjudged to be "hereby incorporated by reference in this order and made a part hereof with the same force and effect as if set forth herein." Thus the documents which gave rise to the contempt order were twice made a matter of public record and twice incorporated in the original contempt order.

The so-called amended order of January 23 is absolutely identical with the original order with the immaterial exception that the documents, in addition to being incorporated in the order by reference were also "made a part hereof and marked Exhibits 'A' and 'B' respectively." The reason for the change is probably explained by Illinois cases such as *People* v. *Hogan*, 256 Ill. 496, holding that the record on review of a contempt order is limited to the order itself. But respondent has not called our attention to any Illinois cases holding that incorporation of matter of public record into an order by reference is insufficient to make that matter part of the order. Indeed, this very proceeding indicates that this requirement is not strictly applied. For the Illinois Appellate Court set aside one order adjudging petitioner in contempt for the tone of his answer to a certain pleading filed by Shamberg on the ground that the charges in Shamberg's pleading, which was not made a part of the contempt order, justified the tone of the answer. 328 Ill. App. 46, 60–68. But even if it is assumed that the amendment was necessary to satisfy the requirements of Illinois law, it was of such a trivial and ministerial nature that it obviously did not affect the merits of petitioner's constitutional allegations.

When petitioner sought review of the original contempt order in the Supreme Court of Illinois he obtained the only review of those constitutional contentions which

the state procedure offered him. That court by denying the writ of error must be presumed to have passed on the merits of the constitutional questions in the case. It is inconceivable that the supreme court would have passed on them any differently if review of the so-called amended order had later been requested. For, as far as that court is concerned, it is likely that the law of the case as to the constitutional issues was already settled. But even if it were taken that the supreme court might have reversed its decision, the fact remains that the so-called amended order was the same order as the original January 15 order of which review had already been denied. Petitioner is deemed to have waived his federal constitutional rights not because he failed to seek review in the supreme court, but because he failed to do so twice.

It is definitely not "well-settled Illinois law" that a waiver results in these circumstances. In all of the cases cited in the opinion of the Court and in respondent's brief the petitioner initially sought review in the intermediate appellate court. In none did he do so only after having the state supreme court deny an application for review. There is no "well-settled Illinois law" to the effect that two applications to the state supreme court must be made in order to avoid waiver of constitutional rights. And if such a requirement did exist it certainly would not be reasonable.[6] Consequently I am unable to agree that the doctrine of waiver applied here to deprive a man of his personal freedom in violation of

---

[6] Even the opinions of the Illinois appellate courts in this proceeding would not enlighten future litigants because they do not mention the fact that writ of error was denied by the supreme court before review in the appellate court was sought. See 328 Ill. App. 46 and 396 Ill. 583.

his constitutional rights is a reasonable state procedure within the *Central Union* case.[7]

By stating that the petition for certiorari is not timely if it challenges the original order, the Court repeats its mistake of treating the so-called amended order as something entirely separate and distinct from the original contempt order. But with the two orders viewed as the same, there is clearly no question of timeliness. For the denial of writ of error by the Illinois Supreme Court left state issues that went to the core of the litigation for determination by appeal through the intermediate state court. The situation therefore is not the one presented in *Richfield Oil Corp.* v. *State Board,* 329 U. S. 69, where the only things remaining to be done were ministerial acts in the trial court. Here, even if nothing more was left for the trial court to do, a great deal more was left to be done by the Illinois Appellate Court, namely, to review and determine all questions of state law presented in the case.[8] The *Richfield* decision had no relation to a split procedure for review in the state courts such as this, sending federal questions to one tribunal and state questions to another. Until the final judgment was entered by the Supreme Court of Illinois on May 19, 1947, in review of the Illinois Appellate Court's judgment, the core of the litigation had not been terminated "by fully determining the rights of the parties." *Gospel Army* v. *Los Angeles,* 331 U. S. 543, 546. For only then were the state questions finally adjudicated. Hence any earlier application for certiorari would have met with the in-

---

[7] That case declared that the state procedure "should bind us unless so unfair or unreasonable in its application to those asserting a federal right as to obstruct it." 269 U. S. 190, 195.

[8] These questions are discussed in 328 Ill. App. 46 and 396 Ill. 583.

superable obstacle that we were without jurisdiction, for want of any final judgment.[9]

Petitioner was thus placed in a second dilemma, arising in the appellate stage of the state proceedings. He first followed the only course afforded by the state procedure for securing review of his federal constitutional questions. When they were determined against him he was barred from coming here because state questions remained to be decided by the intermediate appellate court and thus as a matter of federal law under our decisions the judgment was not final. In order to surmount this jurisdictional hurdle petitioner then went to the only place he could go, the intermediate appellate court. When it decided the state issues against him, he took the necessary further step of going again to the state supreme court. Its adverse decision finally closed the trap upon him. For the first time a judgment dispositive of the whole controversy was rendered, and thus the way opened under federal law for review of the federal questions here. But at the same instant that door was closed, by application of the Illinois rule that taking appeal to the intermediate court "waived" petitioner's federal rights. And that ruling held on his application for rehearing.

I can imagine no better way to annihilate constitutional rights, both substantively and procedurally, than

---

[9] Cf. *Prudential Ins. Co.* v. *Cheek*, 252 U. S. 567, 259 U. S. 530. It has been suggested that on the record we cannot ascertain whether the Illinois Supreme Court's denial of review of the order of January 15th was on federal or state grounds. But when the only purpose of review under state law can be to secure decision of federal questions and no more appears from the state court's order than that the application for review was denied, this Court has refused to allow a presumption that the denial was on state grounds only to cut off review here of federal constitutional questions determinative of the citizen's liberty. *Williams* v. *Kaiser*, 323 U. S. 471, 478, and authorities cited.

thus dovetailing federal jurisdictional limitations with state procedural ones. To secure review of federal questions here, petitioner must exhaust his state remedies. But if he exhausts those remedies he "waives" the federal questions.

This is not waiver. It is nullification. I do not think Congress intended to countenance such a denial by the requirement of finality or that its effect, in conjunction with state procedures, should be to cut off the very rights which the jurisdictional authorization for reviewing final judgments was enacted to safeguard.

The issue of federal procedure in this case is not one of timeliness. It is rather one of finality, now applied to deny rather than to assure review in protection of personal liberty from invasion by unconstitutional state action. *Central Union Co.* v. *Edwardsville, supra,* contemplated no such paradox.[10] Nor, to my knowledge, has any other decision of this Court. As a matter of federal procedure petitioner did not waive his constitutional rights either by failing to seek certiorari from the Illinois Supreme Court's judgment of January 23, 1945, or by taking the necessary steps to seek the writ when he appealed to the state intermediate appellate court.

The judgment of the Illinois Supreme Court should be reversed.

---

[10] It is suggested that the *Central Union* case implicitly held that a judgment of the Illinois Supreme Court adjudicating the federal issues in a case is final even though state issues remain unresolved. That case, however, was decided on the express assumption that the Illinois Supreme Court would pass on the federal question *"together with all the other questions in the case."* 269 U. S. 190, 195. (Emphasis added.) Of course the state supreme court judgment is final when it settles all the state issues as well as the federal issues.