(No. 18367.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK CLARDY, Plaintiff in Error.

*Opinion filed February 20, 1929—Rehearing denied April 4, 1929.*

Louis Greenberg, John F. Tyrrell, and John F. Higgins, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, Robert E. Crowe, State's Attorney, and Roy D. Johnson, (Edward E. Wilson, and Lee R. LaRochelle, of counsel,) for the People.

Mr. Justice Duncan delivered the opinion of the court:

Frank Clardy, plaintiff in error, pleaded guilty in the municipal court of Chicago to an information charging that on March 1, 1927, in the city of Chicago, he did then and there unlawfully carry concealed on or about his person a revolver, in violation of section 4 of an act entitled, "An act revising the law relating to deadly weapons." (Laws of 1925, p. 339.) He was sentenced to six months' imprisonment in the house of correction and to pay a fine of $100 and costs of suit. He prosecutes this writ of error for review of the record by this court.

The assignments of error are, first, the judgment and sentence imposed were based on an unconstitutional statute; and second, there has been no republican form of government in Illinois since 1911.

The substance of the contentions of plaintiff in error in this case is, that there has been no legal election of members of the General Assembly of Illinois since the election of such members in 1910, and that the members of the

General Assembly of 1911 are still in office for the purpose, only, of making an apportionment, as that body neglected and refused to apportion the State into senatorial districts, as provided and directed by the provisions of section 6 of article 4 of the Illinois constitution of 1870. It is stated by plaintiff in error in his briefs and argument in this court that the only way to remedy this chaotic condition in the State is for the Governor, by proclamation, to convene the General Assembly of 1911 for the sole purpose of making an apportionment, based on the Federal census, for the election of members of the General Assembly, "to be held in 1928." He also makes the further contention that for the reasons above given Illinois has had no republican form of government since the year 1911, when the General Assembly "set at naught" the provisions of the constitution aforesaid, and that the Deadly Weapon act of 1925 is not constitutional, as it was enacted by a General Assembly that had no legal existence under the constitution.

The contention of the State is that the constitutionality of the Deadly Weapon act of 1925 was not raised in the lower court in any way and for that reason it cannot be raised here, under the holdings of this court in *People* v. *Pierce,* 296 Ill. 327, and *People* v. *Esposito,* 296 id. 535. It is the further contention of the State that the legislature that enacted the act of 1925 was a *de facto,* if not a *de jure,* legislature, and that the acts and laws enacted and passed by it must be accepted as legal and binding, and that plaintiff in error cannot be heard to attack the constitutionality of the act after his plea of guilty and failure to make an attack against the validity of the law in the court below. In his reply to this contention plaintiff in error takes the ground that the "illegally constituted General Assembly of 1925" cannot, under the constitution, be treated as a *de facto* legislature.

Under the provisions of section 118 of the Practice act, writs of error to the circuit courts, the criminal court of

Cook county, the county courts and city courts, in all criminal cases below the grade of felony, shall be taken directly to the Appellate Court, and in all criminal cases above the grade of misdemeanors, and cases in which the validity of a statute or a construction of the constitution is involved, shall be taken directly to the Supreme Court on writ of error. It is true, as contended by plaintiff in error, that under the provisions of sections 3 and 4 of division 15 of the Criminal Code, enacted in 1845, writs of error in all criminal cases where sentence is not death shall be considered as writs of right and issued of course, and, when a *supersedeas* is desired, a transcript of the record, with a certificate and assignment of errors, must be presented to the Supreme Court if in session, or to one of the judges thereof in vacation, in like manner as in cases where the sentence is death. Section 11 of article 6 of the constitution of 1870 provides that after the year 1874 inferior appellate courts of uniform organization and jurisdiction may be created by law in districts formed for that purpose, to which such writs of error as the General Assembly may provide may be prosecuted from circuit and other courts. The Appellate Court was created in 1874, and section 118 of the Practice act was adopted thereafter, and sections 3 and 4 of division 15 of the Criminal Code must be construed so as to harmonize with the provisions of section 118.

The writ of error in this case was properly sued out of this court. This court said in the case of *Highway Comrs.* v. *City of Bloomington,* 253 Ill. 164: "The rule is universal that an unconstitutional law confers no right, imposes no duty and affords no protection. It is in legal contemplation as though no such law had ever been passed." If the act of 1925 is unconstitutional, as contended by plaintiff in error, he plead guilty to an information which charged no crime whatever and the lower court was without authority to pronounce any judgment or sentence on such plea. He therefore had a right to prosecute this writ of error in

this court although he had not previously raised any question as to the constitutionality of the act under which the sentence was imposed, and he has by this writ availed himself of the proper remedy to avoid the effects of the unlawful judgment and sentence. This court has held in a number of cases that the writ of *habeas corpus* cannot be made to perform the functions of a writ of error or an appeal, and that where defendant is sentenced under the provisions of a void act that question is properly raised on a writ of error in this court. *People* v. *Strassheim, 242* Ill. 359.

In the case of *People* v. *Stoyan,* 280 Ill. 300, it appeared that a plea of guilty was entered by the defendant in the lower court to an information charging him with the crime of assault with a deadly weapon. The defendant sued out a writ of error from this court to have the record of the municipal court reviewed. One of the contentions made in this court was that the information did not charge the crime of assault with a deadly weapon, for which he was sentenced. The other contention was that the Reformatory act, under which he was sentenced upon his plea of guilty, was unconstitutional. The People contended in this court that the cause should be transferred to the Appellate Court for the reason that the constitutional question was not raised in the court below. This court held that the constitutional question did not arise until the entry of judgment and that it was therefore properly raised in this court but held that it was not necessary to pass on the constitutional question, and disposed of the cause by holding that the information did not charge the crime of assault with a deadly weapon, for which the defendant was sentenced.

Section 2 of article 4 of the constitution of 1870 provides that an election for members of the General Assembly shall be held on the Tuesday next after the first Monday in November, 1870, and every two years thereafter, in each county, at such places therein as may be provided by law. Section 6 of said article provides that the

General Assembly shall apportion the State every ten years, beginning with the year 1871, by dividing the population of the State, as ascertained by the Federal census, by the number 51, and the quotient shall be the ratio of representation in the senate; that the State shall be divided into fifty-one senatorial districts, each of which shall elect one senator, whose term of office shall be four years; that the senators elected in 1872 in districts bearing odd numbers shall vacate their offices at the end of two years and those elected in districts bearing even numbers at the end of four years, and vacancies occurring by the expiration of terms shall be filled by the election of senators for the full term. Sections 7 and 8 of the same article provide that the house of representatives shall consist of three times the number of the members of the senate and the term of office shall be two years, and that three representatives shall be elected in each senatorial district at the general election in 1872 and every two years thereafter.

It is clear from the foregoing provisions of the constitution that the terms of representatives and senators composing the General Assembly are made to expire at the end of the terms for which they were, respectively, elected, and that the members of the General Assembly do not hold over for any purpose after their terms expire. These propositions are emphasized and made more certain by sections 13 and 14 of the last twenty-six sections of the constitution set forth under the general head, "Schedule." By section 13 it was made the duty of the Governor and Secretary of State, immediately after the adoption of our present constitution, to proceed to ascertain and fix the apportionment of the State for members of the first house of representatives under the constitution, the apportionment to be based on the State census for the year 1865 in case the Federal census could not be ascertained prior to Friday, September 23, 1870. By the provisions of section 14 members of the first house of representatives under the constitution were

to be elected on Tuesday after the first Monday in November, 1870, according to the apportionment fixed by the Governor and Secretary of State and announced by the Governor, and the members of such General Assembly were to hold their offices for two years "and until their successors shall be elected and qualified." Section 15 of the schedule provided that two senators should be elected in districts where the terms of senators were to expire on the first Monday of January, 1871, and the senators so elected were to hold their offices for two years. These provisions of the schedule also make it clear that the terms of the senators were made to expire at the end of the terms for which they were elected. This is also in accordance with the provisions of section 6 of article 4 of the constitution above quoted, which declare, in substance, that senators shall vacate their offices at the expiration of the terms for which they were elected. There was an apparent necessity for the members of the house of represenatives elected in 1870 to hold their offices until their successors were elected and qualified. There was no such necessity as to senators elected after the constitution went into effect or for members of the house of representatives. We therefore hold that under the present constitution the terms of all members of the General Assembly, representatives and senators, expire for all purposes at the end of the terms for which they are, respectively, elected.

As suggested by plaintiff in error's brief, this court takes judicial notice that a Federal census was taken in 1910 and in 1920, and we also take judicial notice of the fact that no apportionment of the State into senatorial districts has been made by the General Assembly since the 1910 Federal census was taken and promulgated. We also agree with the contention of plaintiff in error that the constitution of 1870, in very positive terms set forth in section 6 of article 4, made it the duty of the General Assembly to apportion the State every ten years, beginning with the year 1871, by di-

viding the population of the State, as ascertained by the Federal census, by the number 51, and by that method dividing the State into fifty-one senatorial districts, each of which should elect a senator as provided in said section and representatives as provided in sections 7 and 8 of said article. Section 16 of the schedule repeated the declaration that the General Assembly should make its first apportionment of the State at its first session held after the adoption of the constitution, in accordance with the provisions of article 4 thereof. It is declared in section 19 of the schedule that the General Assembly shall pass all laws to carry into effect all of the provisions of the constitution. The members of the constitutional convention in their debates made it particularly plain that they regarded the provisions of the constitution with reference to apportionment as one of the most important features of the constitution to be carried out.

There is no indication in any of the provisions of the constitution of an intention to penalize the people of the State, as contended by plaintiff in error, to the extent that they should forfeit their right to elect subsequent legislatures in case any previous one had refused to apportion the State into senatorial districts, or that members of a subsequent General Assembly should not be permitted to hold office as such because of the fact that a preceding General Assembly had refused to apportion the State. In other words, we hold that we are not authorized by the constitution of Illinois to declare that the General Assembly that passed the Deadly Weapon act of 1925 was not a *de jure* legislative body and the members thereof *de jure* members and officers of that General Assembly. The act of 1925 is therefore not unconstitutional on the grounds contended for in this case. The act was also held valid under the decision of this court in the case of *People* v. *Saltis,* 328 Ill. 494.

The judgment of the municipal court must therefore be, and it is, affirmed.                    *Judgment affirmed.*