**UNITED STATES of America ex rel. Roger TOUHY, Relator-Appellee,**

v.

**Joseph E. RAGEN, Warden, Illinois State Penitentiary, Joliet, Illinois, Respondent-Appellant.**

**No. 11249.**

United States Court of Appeals Seventh Circuit.

July 20, 1955.

Latham Castle, William C. Wines, John Gutknecht, Chicago, Ill., William C. Wines, Raymond S. Sarnow, Ben Schwartz, Asst. Attys. Gen., of counsel, for appellant.

Robert B. Johnstone, Howard B. Bryant, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and MAJOR and FINNEGAN, Circuit Judges.

DUFFY, Chief Judge.

The relator, Roger Touhy, is confined in the Illinois State Penitentiary pursuant to the terms and provisions of two judgments of conviction. On February 24, 1934, the Criminal Court of Cook County, Illinois, imposed upon him a sentence of 99 years for the crime of kidnapping for ransom. On November 30, 1943, the Circuit Court of Will County, Illinois, sentenced him for a term of 199 years for the crime of aiding a prisoner to escape from a penitentiary.

On April 2, 1948, relator filed a petition for a writ of habeas corpus in the District Court for the Northern District of Illinois. This petition was later amended and asserted that Touhy's conviction of kidnapping was obtained by the use of testimony known by the prosecuting officials to be perjured, and that in and during said trial, and in preparation therefor, relator was deprived of the effective assistance of counsel. The petition also alleged that the judgment of conviction of the crime of aiding a prisoner to escape was invalid because the Illinois statute, Ill.Rev.Stat.1953, Ch. 38, § 228, upon which said conviction was based, was and is unconstitutional.

The District Court ordered a hearing on the petition. A large amount of oral and documentary evidence was received. The hearings were interrupted to permit relator to apply for relief under the Illinois Post-Conviction Hearing Act, Ill. Rev.Stat.1953, Ch. 38, §§ 826–832, which became effective August 4, 1949. Touhy filed a petition in the Criminal Court of Cook County, Illinois, asking relief under said Act, with reference to his conviction for kidnapping, but that Court sustained the State's motion to dismiss the amended petition, and entered an order of dismissal on December 11, 1950. On May 24, 1951, the Supreme Court of Illinois dismissed a petition for writ of error in the post-conviction hearing matter. On January 2, 1952, the United States Supreme Court denied a petition for writ of certiorari, Touhy v. State of Illinois, 342 U.S. 905, 72 S.Ct. 297, 96 L.Ed. 678. On September 8, 1952 this cause was called for further hearing.

Roger Touhy was arrested in the fall of 1933 and was taken to the State of Minnesota where, with others, he was tried for the kidnapping for ransom of one Hamm. Touhy and his co-defendants were acquitted. One Karpis later confessed to this kidnapping. Touhy was then brought to Cook County, Illinois, and, with others, was tried in the Criminal Court of Cook County for the kidnapping for ransom of one John (Jake the Barber) Factor. The jury disagreed, and on February 2, 1934 the jury was discharged. Eleven days later, Touhy and his co-defendants were again placed on trial in the Criminal Court of Cook County, charged with the kidnapping of Factor, and were convicted on February 24, 1934. A sentence of 99 years was imposed on Touhy. The judgment of conviction by the Criminal Court of Cook County was affirmed in People v. Touhy, 361 Ill. 332, 197 N.E. 849.

Touhy's conviction of aiding a prisoner to escape was based on events occurring in October, 1942. One Ed. Darlak was a prisoner in the same penitentiary where Touhy was confined, and was serving a 199-year sentence. Darlak's brother succeeded in smuggling a pistol into the penitentiary and, using said gun, Ed. Darlak, Touhy, Martlick Nelson and others escaped. After recapture, and upon the theory that Touhy and Nelson aided Darlak and others to escape, Touhy and Nelson were each indicted and convicted of aiding Darlak's escape, and each received a sentence of 199 years. Darlak's brother who smuggled the pistol into the jail, was prosecuted for aiding Nelson who was serving a lighter sentence, and he was released from prison after serving three years. Ed. Darlak was not prosecuted at all.

Prior to 1927 the maximum punishment that could have been imposed on a charge of aiding another to escape from

an Illinois penitentiary was confinement in a county jail not exceeding one year, or a fine not exceeding $1,000, or both. However, Touhy was prosecuted under § 92, Laws of Illinois, 1927, Ill.Rev.Stat. 1953, Ch. 38, § 228, which provided:

"Whoever conveys into the penitentiary, or into any jail or other place of confinement, any disguise, instrument, tool, weapon or other thing adapted or useful to aid a prisoner in making his escape, with intent to facilitate the escape of any prisoner there lawfully committed or detained, or by any means whatever aids, abets, or assists such prisoner to escape or to attempt to escape from any jail, prison, or any lawful detention whether such escape is effected or attempted or not, or conceals or assists any convict after he had escaped, shall upon conviction thereof be given the same penalty as the prisoner whom he aided or abetted, except that in case the prisoner is sentenced to death, the penalty for such aid shall be imprisonment for life in the penitentiary."

Touhy did not prosecute a writ of error from his conviction in 1943 for aiding a prisoner in a penitentiary to escape. There is nothing in the record to indicate that the prison or other state officials prevented him, in any way, from prosecuting such a writ. The State of Illinois argues, indeed insists, that Touhy may still do so, as that privilege is available for twenty years from the date of conviction. It might be noted that in the petitions filed in the Circuit Court for Will County in the years 1945 and 1948 Touhy did not attack the constitutionality of the statute under which he was sentenced. It is also of interest to note that on the date when Touhy and others escaped from the penitentiary, it was not an offense against the State of Illinois to make such an escape.

After lengthy hearings (the printed record herein contains over 3300 pages) Judge Barnes gave careful consideration to the evidence which had been received. He prepared an extended opinion (611 printed pages) in which he commented, in considerable detail, upon the testimony of almost all of the witnesses.

Judge Barnes concluded that the alleged kidnapping of Factor was a hoax, planned by Factor himself to prevent his extradition to Great Britain; that Touhy's conviction of the Factor kidnapping was obtained by the use of perjured testimony known by the State prosecuting officials to have been perjured; also, that Touhy was denied effective assistance of counsel. The Court also held that the Illinois statute pertaining to aiding a prisoner to escape from a penitentiary was unconstitutional, and the proceedings against Touhy brought under said statute were null and void. The trial court was of the opinion that the statute was unconstitutional as being in violation of the equal protection of the laws clause of the Fourteenth Amendment to the United States Constitution. Judge Barnes ordered that the relator be discharged from custody.[1]

Habeas corpus can be used only to test the lawfulness of the detention. If either of the judgments of conviction under which Touhy is presently serving is valid, there is no need to test the validity of the other. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238; United States ex rel. Parker v. Ragen, 7 Cir., 167 F.2d 792.

However, before considering whether the trial court was correct in holding the Escape Statute unconstitutional, we are faced with the serious and fundamental question of whether Touhy exhausted his

1. The State gave prompt notice of appeal. Judge Barnes released Touhy on bail. On motion, this Court vacated that part of Judge Barnes' order permitting Touhy's enlargement upon bail, and remanded him to the custody of the respondent, Ragen, pending a decision by this Court on this appeal. The Supreme Court of the United States denied certiorari, United States ex rel. Touhy v. Ragen, 348 U.S. 945, 75 S.Ct. 366.

State remedies. The United States Supreme Court has clearly stated "a failure to use a state's available remedy, * * * bars federal habeas corpus." Brown v. Allen, 344 U.S. 443, 487, 73 S.Ct. 397, 422, 97 L.Ed. 469.

Where an application for a writ of habeas corpus is filed upon behalf of a person who is in custody pursuant to a judgment of a State Court, the statute [2] specifically provides that such application "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."

At the trial where Touhy was convicted of aiding Darlak to escape, he was represented by counsel of his own choosing. In his motion for a new trial relator did state the statute was unconstitutional because "(a) it provides different penalties for like offenses." Relator's counsel, in the case at bar, admits " * * * this was probably the wrong motion under technical Illinois law * * *." No attempt was made to seek a review in an appellate court. In explanation, relator's present counsel states in his brief " * * * there is nothing to indicate responsibility on the part of Relator, for the fact that his bill of exceptions was not prepared and submitted within the fifty-day period. The proof on this point, admittedly skimpy, is that he was financially unable to go further."

It stands as a verity in this case that Touhy never sought relief under the Illinois Post-Conviction Hearing Act with respect to his conviction for aiding a prisoner to escape. The effective date of the Act was August 4, 1949. Touhy had three years thereafter within which to commence a proceeding under that Act, and a further period if he could show the delay was not due to culpable negligence. Ill.Stat.1949, Chapter 38, § 826. He did commence a proceeding under the Act in the Criminal Court of Cook County with reference to his conviction for kidnapping, but for some reason unexplained, he did not challenge in the Circuit Court of Will County the validity of his conviction under the Act pertaining to the aiding of a prisoner to escape.

We think Touhy did not exhaust his State Court remedies in two respects. First, by not prosecuting a writ of error to review his conviction obtained in 1943, and second, by failing to pursue the remedy afforded him under the Illinois Post-Conviction Hearing Act.

In United States ex rel. Peters v. Ragen, 7 Cir., 178 F.2d 377, 378, this Court said:

"Counsel here contends that inasmuch as this remedy did not exist at the time of the proceedings in the District Court resulting in the judgment here appealed from, it should not preclude consideration by this court of the merits of the case. We do not agree. The Supreme Court of the United States has always required scrupulous adherence by the federal courts to the doctrine of exhaustion of state remedies, as indicated by a very recent pronouncement of that principle in Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 1074 [93 L.Ed. 1333]. However, as it there said, 'of course Illinois may choose the procedure it deems appropriate for the vindication of federal rights.' Until the recent enactment of the statute referred to above, such serious procedural difficulties stood in the way of consideration by the Illinois courts of asserted violations of constitutional rights as to render it doubtful whether any relief could be obtained in those courts. See Young v. Ragen, supra; Marino v. Ragen, 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170. It therefore became necessary in many cases for the federal courts to entertain applications for relief which would better have been considered by the state courts. With

2. Title 28 U.S.C.A. § 2254.

the new Act, however, this appears to be no longer true. And with the jurisdiction of federal courts circumscribed as it is in the case of prisoners held in custody pursuant to the judgment of a state court, New Federal Judicial Code, 28 U.S.C.A. § 2254, we are of the opinion that if a new remedy is created at any time, such remedy must first be resorted to before it can be said that state court remedies have been exhausted. This is in accord with the action of the Supreme Court on October 10, 1949 in a series of cases involving applications by Illinois prisoners for discharge on writ of habeas corpus: 'The petition for writ of certiorari in each of these cases is denied without consideration of the questions raised therein and without prejudice to the institution by petitioner of proceedings in any Illinois state court of competent jurisdiction under the Act of August 4, 1949 * * *.' Ferguson v. Ragen, 338 U.S. 833, 70 S.Ct. 50 [94 L.Ed. 508]."

In United States ex rel. Lilyroth v. Ragen, 7 Cir., 222 F.2d 654 (decided May 25, 1955), this Court held an out-of-time proceeding under the Illinois Post-Conviction Hearing Act was ineffectual to accomplish an exhaustion of State Court remedies. There the petitioner attempted to file belated proceeding, offering as an excuse, lack of knowledge of the existence of the Act due to an absence from Illinois. Here Touhy, although clearly advised of the Act and, in fact, proceeding thereunder with reference to another conviction, made no move to obtain relief under that Act from this second conviction.

In Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, the petitioner was one day late in meeting a state limitation upon a step to be taken in perfecting an appeal. The Court said, 344 U.S. at pages 486–487, 73 S.Ct. at page 422: "Finally, federal courts may not grant habeas corpus for those convicted by the state except pursuant to § 2254. * * * but clearly the state's procedure for relief must be employed in order to avoid the use of federal habeas corpus as a matter of procedural routine to review state criminal rulings. A failure to use a state's available remedy, in the absence of some interference or incapacity, * * * bars federal habeas corpus. The statute requires that the applicant exhaust available state remedies. To show that the time has passed for appeal is not enough to empower the Federal District Court to issue the writ."

In Jennings v. State of Illinois, 342 U.S. 104, at page 109, 72 S.Ct. 123, at page 126, 96 L.Ed. 119, the Court said: "And, if a state provides a post-conviction corrective process, that process must be invoked and relief denied before a claim of denial of substantial federal rights may be entertained by a federal court."

This Court has repeatedly held that although a petitioner, incarcerated pursuant to a judgment of an Illinois Court, has exhausted all other State remedies, he is not entitled to a writ of habeas corpus until he has also sought relief under the provisions of the Illinois Post-Conviction Hearing Act. United States ex rel. Giese v. Chamberlin, 7 Cir., 184 F.2d 404; United States ex rel. De Frates v. Ragen, 7 Cir., 181 F.2d 1001; United States ex rel. Peters v. Ragen, 7 Cir., 178 F.2d 377, and United States ex rel. Hamby v. Ragen, 7 Cir., 178 F.2d 379.

Seeking to avoid the effect of the authorities heretofore cited, relator attempts to place himself within an exception to the well-established rule hereinbefore stated. First, he argues that the general rule is not rigid and inflexible, and that District Courts may grant relief in special circumstances, citing Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541. He also points to the habeas corpus statute, § 2254, Title 28, which requires the exhaustion of state remedies "or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."

■ : Relator places much emphasis, on his contention that a writ of error from the Supreme Court of Illinois would have been futile because that Court has held the Escape Act constitutional in People v. Nicholson, 401 Ill. 546, 82 N.E.2d 656. This argument is one of hind-sight. Relator was convicted in 1943. At that date the Illinois Supreme Court had not passed upon the validity of the Act. The Nicholson case was not decided until 1948. Furthermore, the possibility or probability of an adverse decision by an appellate court is insufficient reason for not seeking appellate relief.

In Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982, the defendants argued that because the state of the law appeared so adverse, it would have been futile for them to appeal. They argued under such circumstances the remedy by habeas corpus should be available to them. The Court disagreed saying, 332 U.S. at pages 183–184, 67 S.Ct. at page 1593: "These registrants had available a method of obtaining the right to defend their prosecutions * * *. They did not use it. And since we find no exceptional circumstances which excuse their failure, *habeas corpus* may not now be used as a substitute." The Court also said, 332 U.S. at page 182, 67 S.Ct. at page 1593: "If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by *habeas corpus*, litigation in these criminal cases will be interminable."

Also, in Parker v. Illinois, 333 U.S. 571, 68 S.Ct. 708, 92 L.Ed. 886, the Supreme Court made it clear that in spite of the fact that resort to the highest tribunal of the state may seem futile, that resort must be had where it is available as a pre-requisite to review by the Supreme Court of the United States. The Court said, 333 U.S. at page 575, 68 S.Ct. at page 710: "* * * There is a suggestion that petitioner deemed it useless to try to take the amended order of January 23 to the Illinois Supreme Court since access to that court had been denied him when review of the order of January 15 was sought. But even though the attempt may have seemed futile, it was only by first seeking review in the Illinois Supreme Court that he could bring to this Court the constitutional questions raised under the amended order of January 23."

Another argument made by relator is that inasmuch as he failed to raise the question of the constitutionality of the Escape Statute in the Illinois trial court, and failed to incorporate his motion for a new trial in a Bill of Exceptions certified within a specified time, he cannot now raise the question of constitutionality of that statute upon the common law record by a writ of error. We think People v. Clardy, 334 Ill. 160, 165 N.E. 638 and People v. Borgeson, 335 Ill. 136, 166 N.E. 451 hold to the contrary. In the Clardy case the Court said, 334 Ill. at pages 163–164, 165 N.E. at page 639: "* * * He therefore had a right to prosecute this writ of error in this court although he had not previously raised any question as to the constitutionality of the act under which the sentence was imposed, and he has by this writ availed himself of the proper remedy to avoid the effects of the unlawful judgment and sentence."

We hold there were available to relator adequate state corrective processes which he did not utilize and that he was not prevented by any State officials from utilizing such processes. We further hold that circumstances did not exist which rendered such State processes ineffective to protect relator's rights. We find no such exceptional circumstances as have been referred to in several of the Supreme Court decisions. We conclude that relator's petition for a writ of habeas corpus should have been denied because he had not exhausted his State remedies.

Although we rest our decision herein squarely upon the failure of relator to exhaust his State remedies, we think a brief comment on the so-called Escape Statute [3] might be appropriate. We con-

3. Ill.Rev.Stat.1953, Ch. 38, § 228.

cede that the authors of this legislation might well be surprised to learn that when several prison inmates make a common escape, they can be prosecuted on the theory that they assisted each other. Also, it shocks the conscience when one considers that under the terms of this Act, one escaping prisoner can be sentenced to 199 years while another of the same group may be sentenced to a year or two. We feel that certain of its provisions are not in accord with enlightened concepts of penology. Nevertheless, the highest Illinois State Court has found this Illinois statute to be constitutional, and has held that it is not repugnant to the equal protection clause of the Fourteenth Amendment. People v. Nicholson, 401 Ill. 546, 82 N.E.2d 656. The Court said, 401 Ill. at page 553, 82 N.E.2d at page 660: "It is within the power of the legislature to provide one penalty for all prisoners who aid one convicted of robbery to escape, and to provide another penalty for all prisoners aiding one convicted of petty larceny to escape. This is not an arbitrary discrimination. The measure of punishment is fixed by the terms of this statute, in accordance with the seriousness of the offense of which the prisoner, who is released or sought to be released from prison, was convicted."

The decisions of the Supreme Court of Illinois are binding upon this Court on matters of construction of State statutes as distinct from the constitutionality of such statutes. In view of our decision herein we do not reach the question of whether the Escape Statute is repugnant to the equal protection of the laws provision of the Fourteenth Amendment.

The order of the District Court that relator, Roger Touhy, be discharged from further imprisonment and detention by reason of the writ issued by the Criminal Court of Cook County, Illinois, pursuant to its judgment of February 24, 1934, and the writ issued by the Circuit Court of Will County, Illinois, pursuant to its judgment of November 30, 1943, must be and is,

Reversed.

FINNEGAN, Circuit Judge (concurring).

We are asked to review a final judgment rendered below, August 9, 1954, discharging relator Touhy from further imprisonment and detention "by reason of the writ issued by the Criminal Court of Cook County, Illinois * * * and the writ issued by the Circuit Court of Will County, Illinois * * *." Though I approve reversing this judgment I think it imperative to face up to the reasoning embodied in the district judge's memorandum. He applied certain legal principles, arriving at conclusions and findings with which I now disagree. But his final judgment, formidable intellectual enterprise that it is, is an end-product of arduous thoughtful labors deserving, at least by way of courtesy, some detailed discussion demonstrating the basis for reversal. Of paramount importance is that relator also be fully advised of the basis for striking down those considered reasons which led to his release below. After all this is a writ of habeas corpus with which we treat and I am loath to avoid, rather than meet head-on, some of the problems posed by relator's appeal. Long ago Mr. Chief Justice Waite, speaking for a majority in Ex parte Tom Tong, 1883, 108 U.S. 556, 559, 2 S.Ct. 871, 872, 27 L.Ed. 826 pointed out that:

"The writ of habeas corpus is the remedy which the law gives for the enforcement of the civil right of personal liberty. * * * the judicial proceeding under it is not to inquire into the criminal act which is complained of, but into the right to liberty notwithstanding the act. Proceedings to enforce civil rights are civil proceedings * * *."

Relator has invoked various remedies at different intervals since his two convictions. On first blush they present a startling array when tabulated yet in

none of them did he challenge the constitutionality of Ill.Rev.Stat.1947, chap. 38, part. 228, § 92:

1934 Feb. 24. Relator sentenced by the Criminal Court of Cook County, Illinois, for the crime of kidnapping for ransom. Cause No. 71236.

1935 May 15. Petition for writ of habeas corpus denied for want of jurisdiction by the Circuit Court of Will County, Illinois (T.R. 349).

1935 June 14. Conviction for kidnapping affirmed by Illinois Supreme Court on Writ of Error. Rehearing denied October 2, 1935; People v. Touhy, 361 Ill. 332, 197 N.E. 849. This opinion contains a lengthy recital of facts. Relator did not sue out a writ of certiorari from the U. S. Supreme Court to review People v. Touhy, 361 Ill. 332, 197 N.E. 849.

1938 Feb. 18. Habeas Corpus dismissed without opinion by Illinois Supreme Court. Touhy v. Ragen, No. 24616.

1938 Mar. 28. Certiorari sought to review denial of Habeas Corpus No. 24616, dismissed without opinion by U. S. Supreme Court, Touhy v. Ragen, 1938, 303 U.S. 657, 58 S.Ct. 760, 82 L.Ed. 1116.

1942 Dec. 31. Eleanor Touhy filed a petition for writ of habeas corpus against a special agent, Federal Bureau of Investigation. "Apparently this petition was filed while Touhy was held by Federal officers after his escape from the Illinois penitentiary." (T.R. 350).

1943 Sept. 20. Petition for writ of habeas corpus dismissed by Barnes, district judge, for *failure to exhaust state remedies.*

1943 Nov. 30. Relator sentenced by the Circuit Court, of Will County, Illinois, for the crime of aiding a prisoner to escape from the penitentiary.

1944 Mar. 15. Petition for Writ of error Coram Nobis (No. C.N. 41) filed in Criminal Court of Cook County, Ill., denied.

1945 Mar. Petition (No. 105–518 497-19) for writ of habeas corpus dismissed by Circuit Court of Will County, Illinois

for want of jurisdiction. Relator challenged detention under both writs, *i. e.,* kidnapping and escape.

1945 Mar. 27. Petition for writ of habeas corpus, for release from both convictions, denied by the U. S. District Court for failure to exhaust State court remedies (T.R. 351).

1945 June 8. Petition (No. 29479) for writ of habeas corpus denied by the Criminal Court of Cook County, Illinois (T.R. 35).

1946 Oct. 24. State trial court dismissed Coram Nobis, Doc. No. C.N. 72, on grounds that 5 year period of limitations had expired. People's plea in bar and demurrer sustained.

1947 Mar. 19. Coram Nobis dismissal affirmed by Illinois Supreme Court; Rehearing denied May 19, 1947. People v. Touhy, 397 Ill. 19, 72 N.E.2d 827, holding that expiration of 5 year period barred use of Coram Nobis.

[In its opinion (397 Ill. 28, 72 N.E.2d 832) the Illinois Supreme Court noted: "This court, in 1934, thoroughly reviewed the record upon the writ of error sued out of this court to the criminal court of Cook county seeking a reversal of the judgment of conviction on the charge of kidnapping John Factor. People v. Touhy, 361 Ill. 332, 197 N.E. 849. In 1938, we carefully considered the petition for habeas corpus (People ex rel. Touhy v. Ragen, No. 24616,) and the Supreme Court of the United States denied a petition for a writ of *certiorari* seeking a further review. Touhy v. Ragen, 303 U.S. 657, 58 S.Ct. 760, 82 L. Ed. 1116."]

1947 Oct. 20. Certiorari denied, without opinion, by the U. S. Supreme Court. Attempted review of State Supreme Court affirmance of Coram Nobis decision. Touhy v. Illinois, 1947, 332 U.S. 791, 68 S.Ct. 99, 92 L.Ed. 372.

1948 Apr. 2. Relator's petition filed below (48C–448) leading to judgment under review here.

1948 June 14. Petition (Nos. 109–465 52230) for writ of habeas corpus dismissed by the Circuit Court of Will

County, Illinois, for want of jurisdiction.

1948 Oct. 11. Petition for certiorari to obtain review of Will County court's dismissal of petition (Nos. 109–465 522–30) for habeas corpus denied by U. S. Supreme Court. Touhy v. Ragen, 1948, 335 U.S. 831, 69 S.Ct. 16, 93 L.Ed. 384.

1949 Aug. 4. Effective date of the Illinois Post Conviction Remedies Act. Ill.Rev.Stat.1953, chap. 38, pars. 826–832.

1949 Dec. 12. Cause below continued generally to afford relator opportunity to invoke Illinois Post-Conviction Remedies Act.

1950 Dec. 11. State trial court dismissed Relator's petition filed under Ill. Post-Conviction Remedies Act.

1951 May 24. Supreme Court of Illinois dismissed petition for writ of error in the Post-Conviction Hearing matter.

1952 Jan. 2. U. S. Supreme Court denied a petition for writ of certiorari to the Supreme Court of Illinois on the Post-Conviction petition. Touhy v. State of Illinois, 1952, 342 U.S. 905, 72 S.Ct. 297, 96 L.Ed. 678.

1954 Aug. 9. Final judgment, appealed here, was entered below.

Faced with these persistent efforts by relator, the district judge literally framed this issue for himself to answer (Memo, 353): "The first question that presents itself is, Has the Relator exhausted his State court remedies with respect to each of the two writs under which he is held in the Illinois State penitentiary"?; then found:

"Even after the writ was issued here and this case partially heard, the case was continued generally to permit Relator to exhaust the newly created remedy under the Post-Conviction Hearing Act of the State of Illinois. That was done as to the imprisonment under the conviction for kidnapping for ransom by a proceeding No. PC43, filed in the Criminal Court of Cook County in December, 1949, amended October 23, 1950, denied without a hearing December 13, 1951, writ of error denied by the Supreme Court of Illinois June 26, 1951, petition for certiorari denied by the Supreme Court of the United States on January 3, 1952, Touhy v. [State of] Illinois, 342 U.S. 905 [72 S.Ct. 297, 96 L.Ed. 678]. Concerning the sentence for aiding a prisoner to escape, counsel for the Relator in their reply brief say:

"'Relator did not use the Post-Conviction Hearing Act with respect to this second sentence because his counsel, in the light of the Novotny case, believed this to be unnecessary. Actually the time limit for a proceeding under this Act expired in August 1952 (3 years after the adoption of the Act) and the remedy is consequently not available, in any event.'

"Since the trial of this case and since the court has studied the three cases in the Circuit Court of Will County, Illinois, the four cases in the Criminal Court of Cook County, Illinois, the three cases in the Supreme Court of Illinois, and the three cases in the Supreme Court of the United States which antedated Touhy v. [State of] Illinois, 342 U. S. 905 [72 S.Ct. 297, 96 L.Ed. 678], and which, like it, must be regarded as a continuation of State court proceedings, the court has come to the conclusion that the Relator had already exhausted his State court remedies when on December 12, 1949 this cause was continued generally and that the proceedings which culminated in the decision noted in Touhy v. [State of] Illinois, 342 U. S. 905 [72 S.Ct. 297, 96 L.Ed. 678], was unnecessary and that the resultant delay was, of course, unnecessary. The court is now of the opinion that the proceeding filed in the Supreme Court of Illinois on February 15, 1938, and which finally

resulted in the action noted in Touhy v. Ragen, 1938, 303 U.S. 657 [58 S. Ct. 760, 82 L.Ed. 1116], exhausted the Relator's State court remedies with respect to the Relator's imprisonment for kidnapping for ransom.

"The court is further of the opinion that if the Relator had not already exhausted his State court remedies with respect to his imprisonment for the crime of kidnapping for ransom, then the proceeding which was filed in the Criminal Court of Cook County on August 10, 1946, which resulted in the opinion of the Supreme Court of Illinois of People v. Touhy, 1947, 397 Ill. 19 [72 N.E.2d 827], and the action of the Supreme Court of the United States noted in Touhy v. Illinois, 1947, 332 U.S. 791 [68 S.Ct. 99, 92 L.Ed. 372], *did exhaust* the Relator's State court remedies.

"It has been noted that on June 14, 1948, Touhy filed in the Circuit Court of Will County, Illinois, a petition for a writ of habeas corpus, wherein he complained of his detention under the two writs, one for kidnapping for ransom and *one for aiding an escape;* that this petition was denied by the Circuit Judge on July 14, 1948 for lack of jurisdiction; and that a *petition to the* Supreme Court of the United States for a writ of certiorari was denied on October 11, 1948. Touhy v. Ragen, Warden, 335 U.S. 831 [69 S.Ct. 16, 93 L.Ed. 384]. The Court has been and is of the opinion that Touhy thereby sufficiently exhausted his State court remedies in respect of *both sentences* of imprisonment to require this Court to entertain the present petition for habeas corpus. Respondent contends, however, that Relator, by failing to seek appellate review by writ of error in the *Illinois Supreme Court* of his judgment of conviction for aiding an escape, has failed to exhaust his State court remedies in respect of that conviction." (Italics supplied.)

It was at that juncture that the court below concluded relator had "sufficiently exhausted his State court remedies in respect of both sentences of imprisonment to require this Court to entertain the present petition for habeas corpus." The nub of this finding lies in the district judge's reasoning from Wade v. Mayo, 1948, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647 to Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761. For he thought, and so stated, that the Wade case was not overruled by Darr. This latter decision was rendered by a divided court. Mr. Justice Reed delivered the majority opinion, Mr. Justice Douglas took no part in the consideration or decision, Mr. Justice Burton and Mr. Justice Clark joined concurring in the judgment and opinion of the Court, Mr. Justice Frankfurter wrote a dissenting opinion in which Justices Black and Jackson joined. The trial judge's evaluation of Darr was quite understandable when I found this passage in Mr. Justice Frankfurter's dissent to the Darr majority, 339 U.S. at page 221, 70 S. Ct. at page 599:

"The real question before us in this case is whether Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647, should be overruled. Whether this overruling is to be done forthrightly by two words saying the case 'is overruled' or the overruling is euphemistically done by fifteen words hardly changes the fact. Respect for an explicit adjudication on a matter of procedure very recently rendered after the fullest consideration, as well as the soundness of the decision, should lead us to adhere to Wade v. Mayo."

On close examination of relator's contentions presented in connection with his motion for habeas corpus filed April 28, 1945, in the Circuit Court of Will County, Illinois (as No. 105–518 49719) it appears that he challenged the legality of his detention for conviction under the

escape statute, so-called, only insofar as the running of his sentence, *i. e.*, concurrently or consecutively. There is one other flat allegation, made there, viz.: "That the sentence is illegal and without effect." (T.R. 262.) Nothing in the record, filed in our court, discloses any attempt, by relator, to have that Will County circuit court's decision (No. 497-19) reviewed, after dismissing relator's petition.

From my study of relator's subsequent motion for habeas corpus filed in the Circuit Court of Will County, Illinois, June 14, 1948 (Law No. 52230; T.R. 269, 309) it appears he asserted "* * * That the Subsequent Conviction and Sentence Are Void, Having Been Entered Contrary to the Law of the State of Illinois." His argument focused upon the Illinois statutory provision concerning escape, Ill.Rev.Stat.1947, c. 38, par. 228, § 92, and pivoted on the theory relator's conviction "could not have occurred without the illegal prior (kidnapping) conviction" (T.R. 310–311) and that his sentence, for the second conviction, was illegal since it was concurrent rather than consecutive. But I find relator omitted any mention of the constitutionality of Ill.Rev.Stat.1947, chap. 38, par. 228, § 92. All this goes further because after the Will County court dismissed, June 14, 1948, relator's petition he sought a writ of certiorari in the Supreme Court of the United States, which was denied October 11, 1948, Touhy v. Ragen, 1948, 335 U.S. 831, 69 S.Ct. 16, 93 L. Ed. 384. What is significant about all the remedies utilized since 1943 by relator, save the one we are now reviewing, is that from the moment of his conviction November 30, 1943 for aiding the escape of a fellow prisoner (T.R. 348), relator has never put into issue, nor raised any point, concerning the validity of the statutory section which the district judge held (T.R. 760–761) "* * violative of the Equal Protection of the Laws Clause of the Fourteenth Amendment of the Constitution of the United States."

Actually, then, I think the court below could not or should not have reached the merits, as it did, underlying the crime of kidnapping for ransom, as long as relator was incarcerated on one valid sentence—or, one that was invulnerable to an attack on federal grounds. McNally v. Hill, 1934, 293 U.S. 131, 134, 55 S.Ct. 24, 79 L.Ed. 238; United States ex rel. Parker v. Ragen, 7 Cir., 1948, 167 F.2d 792. Even assuming, *arguendo* that People v. Nicholson, 1948, 401 Ill. 546, 82 N.E.2d 656, sustaining the validity of the State criminal provision imposing penalties for aiding escape, was only persuasive in a federal court, there are two other phases of this problem: (i) waiver of the constitutional question and, (ii) avoidance of ruling on a constitutional question when a case can be disposed of on other grounds. Parenthetically, I also note, that because relator might be deemed to have waived his constitutional points through inaction it cannot now be said that a writ of error is futile, hence unnecessary. Quite the contrary that is the remedy open to relator and we cannot, any more than relator, anticipate the possible disposition by the Illinois Supreme Court. Yakus v. United States, 1944, 321 U.S. 414, 435, 64 S.Ct. 660, 88 L.Ed. 834.

Regardless of the certiorari problem stimulated by Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, it is important to note that when certiorari was denied in the Will County habeas corpus No. 52230 that original motion contained no issue of constitutionality of the belatedly challenged Illinois Statute. I find it exceedingly difficult to perceive how a prisoner can be held to have exhausted his state remedies when he has failed to put in issue the very question he uses for asserting a claim to freedom in a federal court. The Illinois Supreme Court has, as yet, never had the opportunity to squarely pass upon the validity of Touhy's detention under Ill.Rev.Stat.1947 (or now 1953), chap. 38, par. 228, § 92.

Nor do I think Frisbie v. Collins, 1952, 342 U.S. 519, 520, 72 S.Ct. 509, 96 L.Ed. 541, supplies a bridge consisting of a "special situation" to carry relator over the gap created by his failure to exhaust state remedies and waiver. As I have already mentioned, by quoting the memorandum filed below, the district judge continued relator's case to give him a chance to invoke the Post-Conviction Hearing Act of Illinois, and yet relator refrained from testing his conviction under the Illinois statute concerning escape.

I find it difficult to reconcile the following recitations found in the district judge's memorandum with any basis for issuing a writ of habeas corpus:

(A) "On December 12, 1949, Respondent filed an amendment to the return stating that the Illinois Legislature had enacted and the Governor on August 4, 1949 had approved the so-called Post-Conviction Hearing Act, and that Relator, having failed to exhaust the remedies made available to him by this Act, this court was without jurisdiction. *On that date,* December 12, 1949, this cause was continued generally. On December 22, 1949, Touhy filed in the Criminal Court of Cook County, Illinois, a petition for relief under said Illinois Post-Conviction Hearing Act, and on December 11, 1950, that court sustained the State's motion to dismiss an amended petition and entered an order of dismissal. On May 24, 1952, the Supreme Court of Illinois dismissed a petition for writ of error in the Post Conviction Hearing Matter. On January 2, 1952, the United States Supreme Court denied a petition for writ of certiorari to the Supreme Court of Illinois * * *" (T.R. 349).

(B) Later in his memorandum (T.R. 352) referring to this Post-Conviction proceeding the trial judge states: "That was done as to the imprisonment *under the conviction for kidnapping for ransom* * * *. Concerning the sentence *for aiding a prisoner to escape* counsel for the Relator in their reply brief say:

" 'Relator *did not use* the Post-Conviction Hearing Act with respect *to this second sentence* because his counsel, in light of the Novotny case, *believed this to be unnecessary.* Actually the time limit for a proceeding under this Act expired in August 1952 (3 years after the adoption of the Act) and the remedy is consequently not available, in any event.' " (Italics added)

Clearly, the "second sentence" was never subjected to state scrutiny under the Post-Conviction Act. The Act's effective date did not bar relator from testing his second conviction if he filed in time— as he did his petition involving the kidnapping conviction. People v. Lewis, 1954, 2 Ill.2d 328, 118 N.E.2d 259. If by "Novotny," relator's counsel was referring to Judge Evans' opinion in Novotny v. Ragen, 7 Cir., 1937, 88 F.2d 72 that case could hardly be used to justify failure to employ a post-conviction remedy provided at the state level and enacted some 12 years later. If I have selected the wrong Novotny case (which I assume is the same one cited in relator's brief here) it still remains that counsel admits the relator's second conviction was untested under Illinois Post-Conviction legislation. I think this, alone, demonstrates failure to exhaust state remedies and consequently precluded any further consideration of the kidnapping conviction, much less allow issuance of the writ.

For all these reasons I think the district judge erroneously discharged relator and erred in overruling respondent's motion to dismiss relator's petition for a writ of habeas corpus.