(No. 40876.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* WILLIAM A. WALCHER, Appellant.

*Opinion filed March 27, 1969.*

160

[redacted]

Underwood, House, and Klingbiel, JJ., concurring and dissenting in part.

W. K. Kidwell, of Mattoon, and Robert L. Gibson, of Paris, both appointed by the court, for appellant.

William G. Clark, Attorney General, of Springfield, and Ralph D. Glenn, State's Attorney, of Charleston, (Fred G. Leach, Assistant Attorney General, and L. Stanton Dotson, Assistant State's Attorney, of counsel,) for the People.

Mr. Justice Ward delivered the opinion of the court:

The appellant, William Walcher, was found guilty of murder following a bench trial in the circuit court of Coles County and was sentenced to death by electrocution.

Walcher, Forrest Hayes and Gerald Groves had been charged by indictment with having slain Clarence Brooks on December 16, 1966, while attempting the armed robbery of Brooks in a liquor store in Mattoon. The indictment

charged *inter alia* that Brooks had been killed while the appellant, Hayes and Groves were attempting a forcible felony, armed robbery. Hayes and Groves pleaded guilty to a lesser charge and testified for the People against the appellant.

The evidence presented was that on December 9, 1966, the appellant, who was on parole following a conviction and imprisonment for forgery, met Hayes and Groves in Decatur. He had known Groves for many years but he had not been acquainted with Hayes. Groves and Hayes had recently been released from the penitentiary and were on parole. On December 16, in the evening, the appellant picked up Hayes and Groves at a bar in Decatur and, with the appellant driving, set out in the appellant's auto for Mattoon, where the appellant intended to purchase automobile parts from an acquaintance. They stopped in Hammond, Illinois, and the appellant and Hayes bought 18 cans of beer. The appellant had one mixed drink at the tavern where they purchased the beer. They proceeded to Mattoon and the appellant testified that Hayes and Groves, who were without funds, proposed robbing the liquor store. Hayes and Groves had lived in Mattoon and, fearing recognition, proposed that the appellant commit the robbery. However, Hayes and Groves testified that they had been drinking much of the day and were drunk and not aware that the appellant intended to commit the crime. The three men had been drinking the beer purchased in Hammond, and the appellant testified he drank 9 cans of beer while driving to Mattoon. The appellant, an alcoholic, had been voluntarily institutionalized for four months in 1962 because of excessive drinking. In Mattoon the appellant parked his car near the liquor store and he pulled the hood of his sweatshirt over his forehead and put on wrap-around sunglasses, as he put it, to cover his light eyebrows and to conceal a scar on his nose. Mrs. Brooks, the owner of the liquor store, Clarence Brooks, her former husband, who helped to operate the

store, and a child of Brooks through another marriage, were in the store when the appellant entered and announced a holdup. According to the appellant's testimony Brooks said: "I'm going to give you the money but do you know how damn hard we had to work for this money, and then you punks come in here to rob me and take it away from me." The appellant testified that he feared Brooks's voice had attracted the attention of persons who might have been in an upstairs apartment and he announced that he would leave. Brooks then said "No you don't" and placed his hands on the gun and the appellant's hand. The appellant said that he did not pull the trigger "of my own volition" and stated he believed that the gun was fired three times in the struggle which followed. He testified he believed Brooks had been wounded in the leg by one of the shots. All of the testimony of Mrs. Brooks is not entirely clear but she did testify that the appellant fired one shot as Brooks "started to turn to go back to the register." Then Brooks, she related, either fell against the appellant or pushed him and both men went through the doorway of the store and a second shot was fired outside the doorway. In all, two shots were fired she said. The appellant stated that all shots had been fired in the liquor store. The appellant fled to the auto and with Groves driving, the three men left Mattoon. Brooks, who had been wounded in the right lower chest and in the left inguinal region, died a short time later in a hospital emergency room. The appellant testified that Hayes threw the gun, glasses, sweatshirt and gloves used by the appellant from their auto, but Hayes denied this. Their auto became stuck in a ditch and a farmer, whose aid they sought, pulled the car from the ditch. A short time later the three men were taken into custody.

The first argument of the appellant is that he was involuntarily intoxicated at the time of the slaying.

As it has been stated, the evidence of the appellant was that while driving to Mattoon, where Brooks was slain, the

appellant and Hayes purchased 18 cans of beer at a tavern in Hammond. There he also had a mixed drink. While driving from Hammond to Mattoon he drank 9 cans of the beer.

It is clear that the appellant's drinking was voluntary and that the contention of involuntary intoxication cannot be supported. Voluntary intoxication will not provide a defense to conduct which the law regards as criminal unless the intoxication makes impossible the existence of a mental state which is an element of the crime. (Ill. Rev. Stat. 1967, ch. 38, par. 6—3; *People v. Lion*, 10 Ill.2d 208, 214.) Here, the record does not show the appellant to have been intoxicated but it does show that his conduct at the time was with understanding and a criminal intent sufficient for the crime of murder. Among other things, he drove the automobile on the night concerned, which was very foggy, from Decatur to Mattoon. He parked the auto, which was red and white and showed up "very plainly", so that "my car couldn't be seen from the liquor store." He used a hooded sweatshirt and put on wrap-around sunglasses before he entered the liquor store in a cautious attempt to hinder identification. His testimony showed an unimpaired and detailed memory of the attempted robbery and the killing of Brooks, according to his version of those events. The farmer, who pulled the appellant's auto from a ditch after the killing, testified that the appellant spoke in a normal tone of voice. The witness made no statement that the appellant appeared to have been drinking.

The appellant claims, though this is contradicted by the testimony of Hayes and Groves, that the robbery was suggested by the co-defendants. There is evidence in the record that the appellant was a chronic alcoholic and that he was very responsive to suggestion after drinking. However, these conditions do not exempt from criminal responsibility. Ill. Rev. Stat. ch. 38, par. 6—3; *cf. Powell v. Texas*, 392 U.S. 514, 20 L. Ed. 2d 1254, 88 S. Ct. 2145.

·It is another contention of the appellant that the General Assembly of Illinois, and in particular, the Illinois Senate, was not apportioned in accordance with what he states to be requirements of the United States and Illinois constitutions. In this connection *Baker* v. *Carr,* 369 U.S. 186; 7 L. Ed. 2d 663, 82 S. Ct. 691, is cited. It is argued that as a consequence of the malapportionment alleged, the indictment returned against the appellant was unconstitutional, as, *inter alia,* the Criminal Code of 1961, on which the indictment was founded, had been unconstitutional because of the malapportionment.

However, assuming for the purpose of considering this argument that our legislature was malapportioned as alleged and, assuming, too, that such malapportionment violated the constitutions as claimed, the malapportionment does not render the acts of the legislature unconstitutional and invalid. *People* v. ·*Clardy,* 334 Ill. 160; *People ex rel. Fergus* v. *Blackwell,* 342 Ill. 223; see also *Dawson* v. *Bomar,* 322 F.2d 445; *Harrison* v. *Schaefer,* 251 F. Supp. 450, affd. 383 U.S. 269, 15 L. Ed. 2d 750, 86 S. Ct. 929.

The argument that the appellant was prejudiced by the introduction into evidence of allegedly inflammatory photographs of the decedent does not persuade. The receipt of photographs of a decedent into evidence is a question within the sound discretion of the trial court. (*People* v. *Myers,* 35 Ill.2d 311, 331.) This case was not presented to a jury. An argument that exhibits had the effect of inflaming and prejudicing the trier of fact has obviously less force when the trier is the judge who, on a realistic assumption, will be regarded as less prone to such prejudice. The photographs here were used to illustrate the testimony of the pathologist and were used in the cross-examination of the appellant in an. attempt to impugn his version of the shooting of the victim. The trial court rejected the argument that it would be prejudiced by the photographs, stating that it had tried and, earlier, had prosecuted and defended homicide cases

"for many years." The court deemed that the photographs would be helpful in showing the location of the entrance wounds. There was no abuse of discretion in admitting the photographs in evidence.

The appellant next contends that on the evidence he should not have been convicted. The argument is that the appellant effected a withdrawal from the forcible felony, *i.e.*, the robbery he had been attempting, and that the victim then "became the aggressor and caused his own destruction." The death of Brooks was "involuntary manslaughter," he argues at one point, and "accident," at another. The appellant relies on his having testified that he had announced he would leave the store and as he began to back toward the doorway, the victim grasped his hand and in the struggle which followed the victim was shot. However, Mrs. Brooks' testimony contradicted that of the appellant. She stated that Brooks was first shot by the appellant as the victim began to turn to go back to the register. She testified that Brooks then fell against the appellant or pushed him through the doorway. The second of two shots fired, she testified, was fired outside of the store. She denied three times on cross-examination that the appellant had announced he was leaving the store and she did not think that the appellant had taken any backward step.

This having been a bench trial, it was for the trial court to determine the weight and credibility of testimony and make a finding as to whether the guilt of the accused had been established. Its judgment should not be set aside unless the proof is so unsatisfactory as to cause a reasonable doubt of guilt to appear. The evidence is not unsatisfactory in this regard. *People* v. *Davis,* 14 Ill.2d 196.

The contention of the appellant, advanced without any supporting authority, that "the death penalty is in and of itself a violation of the rule against 'cruel and unusual punishment'" under the eighth amendment of the United States constitution cannot be entertained. (See *Louisiana ex rel.*

*Francis* v. *Resweber,* 329 U.S. 459, 91 L. Ed. 422, 67 S. Ct. 374.) However, we are of the opinion, considering all of the circumstances of this case, that the penalty should be reduced to a sentence for a term of years. It is clear from the record that the appellant is and has been for a considerable number of years an alcoholic. We do not mean to suggest that such a person, without more, does not have the capacity to commit crime but we judge the condition is a circumstance to be considered in determining punishment in this case. The record of the Decatur police department discloses some 35 notations of appellant's having been arrested or "picked up" for investigation. Eight of the notations unmistakably are related to drinking. It cannot be said how many of the other notations, such as "disorderly conduct," "vagrancy," "investigation," "window peeping" and "trespassing" may have involved drinking by the appellant. One arrest record for disorderly conduct, when the appellant was 17 years of age, notes that he "continually frequents the taverns and was told by the officer to go home on three different occasions and on the last time, told the officer to go to hell." Materials in the record from the Illinois Department of Public Safety reflect that he received an undesirable discharge from the Army because of drunkenness and disorderly conduct. They contain entries, too, such as "chronic and acute alcoholism. Doubtfully improvable offender"; "* * * very inadequate dependent alcoholic * * *. The prognosis is doubtful."

After considering all the circumstances of this crime and the offender we deem that the sentence of death imposed by the trial court would be inappropriate. We affirm the judgment of conviction of the circuit court of Coles County, but pursuant to Rule 615 of the Criminal Appeals Rules of this court the sentence of death imposed by the circuit court of Coles County is reduced. The defendant in that court, William A. Walcher, who is the appellant in this court, is hereby sentenced to the Illinois State Penitentiary for the crime of

murder, whereof he stands convicted, for a term of years not less than 40 years, nor more than 65 years, and it is further ordered and adjudged that the Department of Public Safety is hereby required and commanded to take the body of the said William A. Walcher and confine him in said penitentiary, according to law, from and after the delivery thereof until discharged according to law, provided such term of imprisonment in said penitentiary shall not be less than 40 years nor more than 65 years, for the crime for which said William A. Walcher was convicted and sentenced. It is further ordered that a penitentiary *mittimus* issue forthwith.

> *Judgment affirmed as to conviction;*
> *sentence modified.*

Mr. JUSTICE UNDERWOOD, concurring in part and dissenting in part:

I concur in that portion of the judgment which affirms the guilt of defendant. I cannot agree that the sentence should be reduced by this court.

We have frequently expressed our opinion that "the trial judge ordinarily has a superior opportunity in the course of the trial and hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed" than does the reviewing court. (*People* v. *Gold*, 38 Ill.2d 510, 518.) We there indicated, as well as in *People* v. *Taylor*, 33 Ill.2d 417, 424, that the power conferred upon reviewing courts to reduce sentences imposed by trial judges "should be applied with considerable caution and circumspection." See, also, *People* v. *Miller*, 33 Ill.2d 439; *People* v. *Smith*, 14 Ill.2d 95.

While I do not mean that a clearly excessive sentence should never be reduced (see *People* v. *Crews*, 38 Ill.2d 331), the sentence here imposed is not, to me, as excessive as it appears to be to my colleagues. Nor am I clear as to why the majority believe this to be an appropriate case for

substituting a different penalty for that determined by the trial judge. The penalty reduction accomplished by the majority is immediately preceded by rather substantial discussion of the prior offenses and generally undesirable conduct of this defendant, but I certainly would not have thought this any reason to mitigate the punishment.

Nor is there any indication that the sentence was imposed by the trial judge other than as the result of serious and substantial deliberation. Quite the converse is true. The extensive hearing in aggravation and mitigation was adjourned on July 27 to August 10 for the imposition of sentence. On the latter date the trial judge orally reviewed the evidence, defendant's past history and referred to several articles by judicial authorities concerning the sentencing process.

In short, the death sentence here imposed was considered by the experienced trial judge to be the appropriate penalty for a murder committed in the course of an armed robbery by an individual whose past record included numerous misdemeanors, a conviction for burglary and who was at the time of the murder on parole from the penitentiary where he had been serving a sentence for forgery. The defendant was not intoxicated at the time of the killing as is clearly demonstrated by his careful attempt to conceal his identity and the vividness with which he recalled the details of that evening's events. In my opinion there is nothing in this record justifying rejection of the penalty selected by the one judge who saw and heard the witnesses and who is more knowledgeable as to the facts of this case than any of us.

I would affirm the judgment and the sentence.

Mr. JUSTICE HOUSE, also concurring and dissenting in part:

I concur in the special concurrence and dissent of Mr. Justice Underwood.

· The argument that the defendant was drinking and had been an alcoholic, hence not responsible, is not impressive. His ability to drive 18 miles to commit a robbery is inconsistent with his defense of intoxication. He clearly knew what he was doing. Further evidence of his condition as to sobriety may be gathered from his elaborate preparation to conceal his identity from his victim. He pulled the head of a sweatshirt over his forehead and put on wrap-around sun glasses to cover certain identifying scars. His treatment for alcoholism had taken place more than 4 years before and has little bearing on his present condition.

We can, and will, reduce excessive punishment in a proper case, such as crimes committed in the heat of passion or where there are valid extenuating circumstances. (See *People* v. *Taylor*, 33 Ill.2d 417; *People* v. *Nelson*, 41 Ill.2d 364.) But where, as here, a defendant engages in such crimes as robbery with a gun in his hand and deliberately shoots down one of the robbery victims in cold blood, I can see no justification for disturbing the sentence.

Mr. JUSTICE KLINGBIEL joins in the above dissents.